2005 ME 107

**Christine MARCOUX**

v.

**PARKER HANNIFIN/NICHOLS PORTLAND DIVISION.**

Supreme Judicial Court of Maine.

Argued: June 15, 2005.

Decided: Sept. 19, 2005.

Howard T. Reben (orally), Adrienne S. Hansen, Reben, Benjamin and March, Portland, for plaintiff.

Jonathan W. Brogan (orally), Russell B. Pierce, Norman, Hansen & DeTroy, L.L.P., Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

LEVY, J.

[¶ 1] This action for negligence arises from an injury suffered by Christine Marcoux at the premises of Parker Hannifin/Nichols Portland Division (Nichols). Marcoux was an on-site coordinator at Nichols for Kelly Services (Kelly), a staffing company that provided temporary employment services to Nichols. Nichols appeals from the Superior Court's (Cumberland County, *Cole, J.*) denial of its motion for a summary judgment, asserting that the court erred in finding that genuine issues of material fact exist with respect to whether (1) it is entitled to immunity from Marcoux's suit pursuant to section 104 of the Maine Workers' Compensation Act, 39–A M.R.S.A. §§ 101–409 (2001 & Supp.2004), and (2) Marcoux established the essential elements of a premises liability action. We affirm the denial of Nichols's summary judgment motion.

## I. BACKGROUND

[¶ 2] Nichols is a high-tech manufacturing and production company located in Portland. Kelly, a staffing company, furnishes assorted employment services to its customers, including Nichols. The incident that precipitated Marcoux's suit occurred on August 9, 1999, which was a payroll day at Nichols. Marcoux was employed as a full-time service manager for Kelly, serving as an on-site coordinator for the Kelly temporary employees assigned to Nichols's plant. One of Marcoux's payroll-related duties was verifying the temporary Kelly employees' hours with the appropriate Nichols supervisors.

[¶ 3] That morning, Marcoux began making her rounds to the supervisors. The route that Marcoux took brought her down an aisle that ran past production machines. Marcoux saw two people talking to each other in the aisle, one of whom wore a Nichols maintenance uniform. After passing the two people, Marcoux neared a particular machine and noticed, to her right, a green stain on the floor by the machine and, to her left, a bucket without any mops in it. The stain was liquid and was about the size of a "small serving plate." To avoid the stain, Marcoux walked between the stain and the bucket. She lost her footing and fell.

[¶ 4] Kelly had secured the payment of workers' compensation benefits for its employees. Marcoux filed a first report of injury for a workers' compensation claim with Kelly in September of 1999, and she

---

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

currently receives workers' compensation benefits for her injuries stemming from the fall. In August 2003, Marcoux brought this negligence action against Nichols. Nichols denied the allegations in the complaint and filed a motion for a summary judgment based on the statutorily provided grant of immunity related to the securing of workers' compensation coverage. This appeal followed the Superior Court's denial of its summary judgment motion.

## II. DISCUSSION

### A. Standard of Review

█ [¶ 5] "We review a ruling on a motion for summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party, to decide whether the parties' statements of material fact and referenced record evidence reveal a genuine issue of material fact." *Rice v. City of Biddeford,* 2004 ME 128, ¶ 9, 861 A.2d 668, 670.[1]

### B. Employer Immunity Under 39–A M.R.S.A. § 104

█ [¶ 6] The immunity and exclusivity provisions of the Workers' Compensation Act provide that if an employer has secured the payment of workers' compensation for its employees, it is immune from suit for personal injuries resulting from work-related injuries, and the employee "is deemed to have waived [his or her] right of action at common law and under section 104 to recover damages for the injuries." 39–A M.R.S.A. §§ 104, 408 (2001). Section 104 of the Act contains the following provisions that specifically address the immunity as it applies to employees engaged in temporary help services:

> An employer that uses a private employment agency for temporary help services is entitled to the same immunity from civil actions by employees of the temporary help service as is granted with respect to the employer's own employees as long as the temporary help service has secured the payment of compensation .... "Temporary help services" means a service where an agency assigns its own employees to a 3rd party to *work under the direction and control of the 3rd party* to support or supplement the 3rd party's work force in work situations such as employee absences, temporary skill shortages, seasonal work load conditions and special assignments and projects.

39–A M.R.S.A. § 104 (emphasis added).

[¶ 7] Nichols asserts that the Superior Court erred in finding that genuine issues of material fact exist with respect to its immunity from Marcoux's suit in several respects, including: (1) its failure to treat the immunity afforded by section 104 as unqualified and applicable to all of Kelly's employees regardless of whether an employee works under Nichols's direction and control; (2) its treatment of Marcoux's employment status as a mixed question of law and fact, rather than a pure question of law; and (3) its failure to treat Nichols's and Kelly's written contract as determina-

---

1. The parties concede that the court's denial of Nichols's summary judgment motion is subject to immediate appellate review because it concerns a claim of immunity under the Workers' Compensation Act. Accordingly, we do not address this issue. *See Hawkes v. Commercial Union Ins. Co.,* 2001 ME 8, ¶ 6, 764 A.2d 258, 263 (holding "that the denial of an employer's motion for summary judgment, based on a claim of immunity pursuant to the exclusivity portion of the Workers' Compensation Act, is immediately reviewable"); *but see Johnson v. Jones,* 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (stating that a defendant who is entitled to an immunity defense may not immediately appeal the denial of a summary judgment motion "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial").

tive of the question of Marcoux's employment status. We consider each argument, in turn.

### 1. Section 104 Immunity as Applied to the Temporary Employees of 3rd Party Employers

[¶ 8] First, Nichols claims that it is entitled to immunity from suit by any Kelly employee who worked at its plant, including Marcoux, because the immunity afforded by section 104 is unqualified; that is, it does not distinguish between the types of temporary employees from whom a 3rd party employer is immune to suit. Because Kelly meets the definition of a temporary help service and secured the payment of workers' compensation for its employees, Nichols argues that it is immune from suit by Marcoux because she was a Kelly employee at the time of her injury, regardless of whether she was working under Nichols's direction and control. Nichols urges that this interpretation is consistent with the foundational policy underlying section 104—to make a 3rd party employer's liability for temporary employees coextensive with that for its regular employees—as well as with our holdings in prior cases interpreting the exclusivity and immunity provisions broadly. *See, e.g., Li v. C.N. Brown Co.,* 645 A.2d 606 (Me.1994).

[¶ 9] In contrast with Nichols's position, Marcoux contends that because she claims that she did not work under the direction and control of Nichols—a material fact that Nichols disputes—she was not necessarily an "employee[ ]" of [a] temporary help service" for purposes of section 104 and her status was more akin to that of an independent contractor. Both parties assert that the plain meaning of section 104 supports their diametrically opposed positions, and neither suggests that the two sentences that address temporary help service provisions in section 104 are ambiguous.

[¶ 10] We conclude that section 104 is reasonably susceptible to both interpretations offered by the parties. On the one hand, Nichols's interpretation is plausible because the first of the two relevant sentences in section 104 does not distinguish between types or categories of temporary employees of a temporary help service from whom a 3rd party employer is immune from suit. On the other hand, Marcoux's interpretation is plausible because the second relevant sentence specifies that an employee of a "temporary help service" is one who "work[s] under the direction and control of the 3rd party" employer. 39-A M.R.S.A. § 104. One can reasonably imply that this qualification in the second sentence inheres in the unqualified statement of immunity contained in the preceding sentence. Under this view, if Marcoux did not work under the direction and control of Nichols, she is not an "employee" of a "temporary help service" for purposes of the statutory immunity afforded Nichols.

[¶ 11] When statutory language is ambiguous in this fashion, we examine evidence of legislative intent, such as legislative history, for guidance. *DiVeto v. Kjellgren,* 2004 ME 133, ¶ 18, 861 A.2d 618, 623. The phrase "to work under the direction and control of the 3rd party" was added to the definition of temporary help services in a committee amendment. Comm. Amend. A to L.D. 121, No. H-401 (117th Legis. 1995). The amendment's statement of fact states that the amendment "clarifies that the immunity only applies when the loaned employee is under the direction and control of the 3rd party." *Id.* The statute was passed as amended. 4 Legis. Rec. S-1173 (1995).

[¶ 12] Hence, the legislative history of section 104 establishes that the Legislature intended that a 3rd party em-

ployer's immunity from suit by a temporary employee is subject to the requirement that the temporary employee was one who was subject to the direction and control of the 3rd party employer. We adopt this construction of section 104 because it is consistent with the overall design of the Workers' Compensation Act. Accordingly, a temporary help service employee who is working at the premises of a 3rd party employer, but who is not under the direction and control of the 3rd party employer, does not fall within the ambit of section 104 immunity. The Superior Court did not err in so concluding.

### 2. Whether Employment Status is a Question of Law

■ [¶ 13] Nichols also contends, however, that there cannot be a genuine issue of material fact with respect to Marcoux's employment status because employment status is purely a question of law. We disagree. The issue of Marcoux's employment status is a mixed question of law and fact. *See Bourette v. Dresser Indus., Inc.,* 481 A.2d 170, 173 (Me.1984) (affirming a trial court's findings regarding the employment status of a loaned employee on the basis that the findings were not clearly erroneous and no error of law was demonstrated). When the facts are undisputed, the issue is a question of law; when the facts are disputed, the issue is for the trier of fact. *See Timberlake v. Frigon & Frigon,* 438 A.2d 1294, 1296 & nn. 3–4 (Me. 1982); *Clark's Case,* 124 Me. 47, 50, 126 A. 18, 20 (1924).

■ [¶ 14] Treating the issue of employment status as a mixed question of law and fact does not undermine the purpose of the immunity provision. Generally, a denial of a summary judgment motion is considered interlocutory and is not immediately reviewable unless an exception to the final judgment rule applies. *See Adoption of*

*Michaela C.,* 2004 ME 153, ¶ 2, 863 A.2d 270, 272. We have, however, permitted employers to appeal immediately the denial of a summary judgment motion based on a claim of immunity pursuant to the Workers' Compensation Act because the statute provides immunity from *suit,* not just immunity from liability. *Hawkes v. Commercial Union Ins. Co.,* 2001 ME 8, ¶ 6, 764 A.2d 258, 263. Accordingly, employers are provided protection to ensure that the benefits conferred by the immunity provision are not illusory and that cases are not erroneously permitted to go to trial.

■ [¶ 15] In this case, disputed facts exist with regard to the degree of direction and control Nichols exercised over Marcoux. For instance, Nichols and Marcoux disagree as to whether Kelly and Nichols, or just Kelly, determined Marcoux's work schedule; whether Nichols exercised the same amount of control over Marcoux as it did over other Kelly employees at its site; whether Kelly and Nichols, or just Kelly, determined Marcoux's job duties as the on-site coordinator; whether Kelly or Nichols paid Marcoux's salary; and whether Nichols interviewed or otherwise selected Marcoux for the on-site coordinator position. Thus, the question of Marcoux's employment status is for the fact-finder to resolve.

### 3. Whether Nichols's and Kelly's Written Contract Controls the Question of Marcoux's Employment Status

[¶ 16] Nichols also argues that, even if (1) the issue of Marcoux's employment status is a mixed question of law and fact, and (2) the extent of direction and control it exercised over Marcoux is relevant, the contract between it and Kelly dictates that Marcoux worked under its direction and control. Nichols contends that the contract specifically created the on-site

coordinator position and that the contract expressly provides that any services provided to it by Kelly employees will be performed under its direction and control.

[¶ 17] Contrary to Nichols's position, the contract between Nichols and Kelly is ambiguous with respect to whether the on-site coordinator works under the direction and control of Nichols. Section 3(a) of the contract specifies that "[t]he services to be performed by employees provided by Kelly will be performed under the direction, supervision and control of" Nichols. The contract states that Kelly will assign its employees to Nichols to perform services described in Exhibit A. Exhibit A provides, under the heading "Description of the Work To Be Performed," that Kelly employees assigned to Nichols will perform light industrial and office clerical work. The on-site coordinator's duties are supervisory in nature and included determining Nichols's staffing needs, interviewing job candidates, placing candidates, and then managing the relationships between those employees and Nichols's supervisors. Because the on-site coordinator's duties do not necessarily fall into the description of the light industrial and office clerical work to be performed by Kelly's assigned employees, it is far from clear whether the on-site coordinator's duties are part of the "services" contemplated in section 3(a) of the contract.[2] The construction of an ambiguous contract is an issue of fact to be determined by the fact-finder. *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 24, 868 A.2d 220, 228.

[¶ 18] In summary, because disputed facts exist as to whether Nichols exercised direction and control over Marcoux, the issue of Marcoux's employment status is a disputed question of fact to be resolved by the fact-finder. *See Timberlake*, 438 A.2d at 1296 n. 4; *Clark's Case*, 124 Me. at 50, 126 A. at 20. Whether Marcoux worked under the direction and control of Nichols is central to the determination of whether Nichols is immune from her suit. *See* 39-A M.R.S.A. § 104. Consequently, the factual disputes about her employment status are material. *See Reliance Nat'l Indem.*, 2005 ME 29, ¶ 7, 868 A.2d at 224.

### C. The Premises Liability Claim

[¶ 19] Nichols also contends that Marcoux failed to establish the essential elements of a premises liability action. Specifically, Nichols asserts that: (1) Marcoux's references to her affidavit in her statement of material facts must be disregarded because her affidavit improperly contradicts her earlier deposition testimony in an attempt to generate genuine issues of material fact and thereby avoid summary judgment, and (2) Marcoux's deposition testimony failed to establish the

---

2. In addition, the contract's provisions for Nichols's conversion of Kelly employees to regular hires further suggests that the contract distinguishes between temporary employees performing light industrial and office clerical work, and employees assigned to coordinate staffing pursuant to the parties' agreement, such as Marcoux. With respect to the former, Exhibit A provides that Kelly agrees not to charge Nichols an additional fee for the conversion of a temporary employee to regular hire after that employee has completed a certain number of hours on assignment. In contrast, with respect to employees assigned to coordinate staffing pursuant to the parties' agreement, Exhibit A provides that Nichols will not solicit such employees for employment for the period of the agreement, or any extensions thereof, without the prior written consent of Kelly. Therefore, despite Nichols's protestations that Marcoux improperly attempts to read the contract in such a way as to single herself out, the contract itself arguably treats employees such as Marcoux differently from other temporary employees.

elements of breach of duty and proximate cause.[3]

### 1. Whether Marcoux's Affidavit Contradicted her Deposition Testimony

[¶ 20] A trial court should disregard an affidavit submitted in support of a party's statement of material facts that clearly contradicts the party's prior testimony. *Zip Lube, Inc. v. Coastal Sav. Bank,* 1998 ME 81, ¶ 10, 709 A.2d 733, 735. Nichols asserts that (1) Marcoux's deposition testimony should be interpreted as establishing that it was not the green stain that caused her to fall, that she did not know what caused her to fall, and that she did not see anything on the floor before or after her fall; and (2) her affidavit claimed that the green stain caused her to fall.

[¶ 21] Marcoux testified at her deposition that she saw a green stain on the floor to her right and that she lost her footing just as she walked past it; she fell on her right knee; she saw that the floor was "shiny" where she fell, but not green like the stain; and after her fall she observed a clear grease stain on the right knee of her pants. In her affidavit, Marcoux stated that she observed some dark green fluid pooled under a machine on her right and she attempted to walk by it; there was a darker section of fluid, and the color faded as it spread; she noticed that the floor was "slippery" beneath her feet; she slipped and fell on her right knee "on the slippery floor surface"; and that after the fall she observed a dark fluid stain on the right knee of her pants.

[¶ 22] Although not entirely consistent, these two renditions are not so clearly at odds as to justify disregarding Marcoux's

affidavit. *See id.* If Marcoux's characterization of the substance as a "stain" and the floor as "shiny" in her deposition are replaced with her characterization of the substance as a "fluid" and the floor as "slippery" as in her affidavit, the two renditions are substantially the same. This is not an instance in which "an interested witness has given clear answers to unambiguous questions" at a deposition and later creates a conflict to avoid "summary judgment with an affidavit that is clearly contradictory." *Id.* (quotation marks omitted).

### 2. Whether Marcoux's Statement of Material Facts Established the Essential Elements for Premises Liability

[¶ 23] With respect to whether Marcoux's statement of material facts and supporting record references established the essential elements of a "slip and fall" premises liability action, we have explained the duty a property owner owes an invitee as follows:

> When a foreign substance on the floor causes a member of the public to sustain injuries, the injured party ordinarily bears the burden of proving the defendant's negligence by establishing (1) that the defendant caused the substance to be there, or (2) that the defendant had actual knowledge of the existence of the foreign substance, or (3) that the foreign substance was on the floor for such a length of time that the defendant should have known about it.

*Milliken v. City of Lewiston,* 580 A.2d 151, 152 (Me.1990).[4]

[¶ 24] Nichols argues that the summary judgment record did not establish that it

---

**3.** Although the denial of a summary judgment motion on the issue of liability is generally an interlocutory order and not immediately appealable, we address Nichols's arguments with respect to the premises liability issue

pursuant to the judicial economy exception to the final judgment rule.

**4.** These factors apply regardless of Marcoux's employment status because the duty owed an

had notice of the dangerous condition and failed to warn Marcoux or to take corrective measures in order to establish a breach of duty. It is undisputed, however, that one of the two people that Marcoux saw in the aisle in the vicinity of the green stain was dressed in a Nichols maintenance uniform. It is also undisputed that Marcoux saw a janitor's bucket near the stain. A reasonable fact-finder could conclude from the presence of a maintenance person and a janitor's bucket at the site of the fluid on the floor that Nichols was on notice of the hazard and failed to warn Marcoux or take corrective measures. *See Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759 (explaining that "a judgment as a matter of law is improper if any reasonable view of the evidence could sustain a finding of proximate cause"). Marcoux also asserts that Nichols did not warn her about the slippery floor, which further supports a finding of breach.

[¶ 25] Analogizing to *Houde*, Nichols argues that Marcoux failed to establish causation. The facts of *Houde* are as follows: Houde cleaned up soot that had been tracked over the kitchen floor of a friend's apartment in which she was staying; the next morning, she slipped on the floor and she claimed that the soot caused her fall. *Id.* ¶¶ 3, 5–7, 787 A.2d at 758. Houde believed the soot caused her fall because she later found a smudge on the pajamas that she had been wearing that morning that resembled soot. *Id.* ¶ 7, 787 A.2d at 758. Emphasizing the fact that Houde testified that she had cleaned up the soot entirely the night before her fall, we concluded that the evidence was too speculative to establish causation. *Id.* ¶ 12, 787 A.2d at 759–60. We stated, "[s]uch evidence might establish that it is *possible*

that it was soot that Houde slipped on, but is insufficient to support a finding to that effect." *Id.* ¶ 12, 787 A.2d at 759. Nichols claims that the causation evidence in the present case is even more speculative than that in *Houde* because there is no evidence of what caused Marcoux to fall.

[¶ 26] Marcoux alleges in her statement of material facts and supporting record references that she saw a green stain, the stain was dark green but its color faded toward its edges, she tried to avoid the stain, she felt something slippery when she fell, she noticed a dark stain near her after she fell, and she later noticed a stain on the right knee of the pants that she had been wearing. This evidence is not as speculative as that in *Houde* because there is no evidence that the stain, unlike the soot, had been completely cleaned before she fell. When viewed in the light most favorable to Marcoux, the evidence could reasonably support a finding that the stain caused her fall. *See id.* ¶ 11, 787 A.2d at 759.

[¶ 27] Nichols disputes Marcoux's allegations, thus raising genuine issues of material fact with respect to the elements of her premises liability claim. Consequently, the Superior Court correctly determined that Marcoux provided evidence of the essential elements of a premises liability action and that genuine issues of fact exist with respect to those elements.

The entry is:

The Superior Court's denial of Nichols's summary judgment motion is affirmed. Remanded to the Superior Court.

---

invitee—"reasonable care in providing reasonably safe premises for their use," *Poulin v. Colby College*, 402 A.2d 846, 848 (Me.1979)— is similar to the duty owed an employee— reasonable care in providing a reasonably safe workplace, *Wilson v. Gordon*, 354 A.2d 398, 401 n. 6 (Me.1976). Marcoux does not suggest that her fall resulted from a recurrent condition. *Cf. Dumont v. Shaw's Supermarkets, Inc.*, 664 A.2d 846, 848 (Me.1995).