STATE OF MAINE                                                    SUPERIOR COURT
CUMBERLAND, ss.                                                   CIVIL ACTION
                                                                 Docket No. CV-07-121


ANN MARIE MCNEIL, et al.,

      Plaintiffs,

v.                                                               ORDER

BRIAN HOGAN, et al.,

      Defendants.


Before the court are three motions for summary judgment. The first is a motion by defendant Hudson-RPM Distributors LTD for summary judgment contending that the undisputed facts establish that Hudson-RPM cannot be vicariously liable for the alleged wrongdoing of its employee, defendant Brian Hogan. This motion is opposed by both Hudson-RPM's co-defendant, Brian Hogan, and by plaintiffs Ann Marie and Donald McNeil.

The second and third motions for summary judgment are motions brought by both Hudson-RPM and Hogan contending that the evidence offered by plaintiffs as to the alleged causation of Ann Marie McNeil's injuries is insufficient and does not raise a disputed issue for trial.


1.    Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered

in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

2.    Vicarious Liability

Hudson-RPM's stand-alone motion for summary judgment, filed May 28, 2008, is based on the contention that Maine has not yet recognized the tort of negligent supervision and that the undisputed facts preclude a finding that Hogan was acting in the course and scope of his employment if he committed an intentional tort against Mrs. McNeil. In response, plaintiffs have forsworn any claim of negligent supervision against Hudson-RPM and have also forsworn any claim that Hogan committed an intentional tort. *See* Plaintiffs' Opposition to Defendants' Three Motions for Summary Judgment dated June 20, 2008 at 4.

The court has reviewed the complaint and concludes that while it can be construed as alleging an intentional tort against Hogan, it can also be construed as asserting a negligence claim against Hogan and a simple vicarious liability claim against Hudson-RPM. *See* Complaint ¶¶ 8-10. On those issues the factual record before the court establishes a disputed issue for trial as to whether Hogan's conduct was within the scope of his employment, thereby potentially subjecting Hudson-RPM to vicarious liability. *See Mahar v. Stonewood Transport*, 2003 ME 63 ¶¶ 13-14, 823 A.2d 540, 544, quoting Restatement (Second) Agency § 228.

2

## 3. Causation

The remaining summary judgment motions, filed by both Hudson-RPM and Hogan on May 30, 2008, were originally premised on the ground that plaintiffs had not submitted any admissible evidence of causation and were accompanied by motions *in limine* seeking to exclude the expert causation testimony to be offered by plaintiffs, based on defendants' depositions of the physicians who had been designated as experts on plaintiffs' behalf. In their expert designations plaintiffs had designated six medical professionals and defendants filed motions *in limine* relating to all six.

In response defendants withdrew the designations of three medical professionals and submitted affidavits from Drs. Vincent Herzog, Peter Ocampo, and Stephen Rodrigue which plaintiffs contend remedy any defects in their deposition testimony.[1]

In brief summary, at Dr. Herzog's deposition he testified that he would like to look at plaintiff's complete file before offering an opinion on causation, that he only had 10 percent of the relevant medical records and was not prepared to give an opinion as to permanency, and that he was not offering any opinion as to the cause of Mrs. McNeil's foot symptoms or her RSD. Herzog Dep. 10, 23, 64.[2] The gist of Dr. Ocampo's testimony was that plaintiff's foot condition appeared to be caused by the incident involving defendant Hogan even thought he was reluctant to offer an opinion on causation based on the information he was aware of at that time. Ocampo Dep. 55-56. Dr. Rodrigue expressed the opinion that plaintiff's shoulder injury was "aggravated" by

---

[1] Hudson-RPM suggests that the affidavits should be disregarded because it contends that the affidavits contradict the doctors' deposition testimony. *See Schnidler v. Nilsen*, 2001 ME 58 ¶ 9, 770 A.2d 638, 641-42. The affidavits, however, are not so clearly contradictory that they may be disregarded. *See Marcoux v. Parker Hannifin/Nichols Portland Division*, 2005 ME 107 ¶ 22, 881 A.2d 1138, 1145. Whether it is fair or appropriate to allow an expert to offer opinions at trial that he was unable to provide at his deposition is a question discussed below.

[2] The court's ability to appraise the deposition testimony of plaintiffs' experts is hindered by the piecemeal nature of the deposition excerpts submitted by defendants.

the motor vehicle accident but he would have wanted additional information before concluding that the motor vehicle accident was the sole cause of Mrs. McNeil's arthritis. Rodrigue Dep. 11-12.

Absent any of the subsequently submitted affidavits, the court would conclude that the deposition testimony of Drs. Rodrigue and Ocampo would be sufficient to survive summary judgment on the issue of causation.[3] Dr. Rodrigue's opinions relate to Mrs. McNeil's shoulder injury. Dr. Ocampo's opinions relate to her foot injury and his opinion that her foot injury had developed into a chronic pain condition.

As far as the court can tell, only Dr. Herzog at his deposition declined to offer opinions as to causation or permanency, although he has now done so on his subsequently submitted affidavit. Dr. Herzog's opinions overlap with those of Drs. Rodrigue and Ocampo in that he offers opinions as to Mrs. McNeil's shoulder injury, her foot injury, and also her back and neck injuries.[4] Of all these injuries, only Mrs. McNeil's foot injury and the chronic pain condition allegedly resulting from her foot injury appear to pose causation issues of special complexity.


4.      Discovery Violations

Although plaintiffs' case has survived summary judgment, the procedure followed in this case by counsel for plaintiffs is unacceptable. In each case, the doctors in question were designated to give certain opinions as to causation and permanency

---

[3]  This is true because Dr. Rodrigue testified that the motor vehicle accident had at least aggravated Mrs. McNeil's shoulder condition, and any deficiencies as to Dr. Ocampo's testimony went primarily to weight. Although he referred at one point to the fact that he was making an assumption as to causation, his testimony as a whole demonstrated that what he termed an assumption was based on the symptoms reported by Mrs. McNeil, on the history she reported, and on his own findings.
[4]  This potentially raises an issue under the one expert per issue rule. See Scheduling Order dated May 22, 2007 ¶ 2.

but were not consulted as to those designations and were not informed that they had been designated until very shortly before their depositions. Counsel for plaintiffs allowed the depositions to proceed, at which the doctors either gave no opinions or very tentative opinions or opinions which they said could not be given with muchconfidence absent further review of the entire medical record. After the discovery deadline and after defendants had moved for summary judgment based on the perceived inadequacies in the testimony of plaintiffs' experts, plaintiffs obtained affidavits remedying the deficiencies.

Counsel for plaintiffs thus frustrated defendants' right to conduct discovery with respect to the actual expert testimony plaintiffs would offer at trial and caused defendants to conduct depositions that were – at least in part – a waste of time and money. If the court thought it would be practical to limit the trial testimony of plaintiffs' experts to the tentative conclusions they expressed at their depositions, it would consider that remedy. However, it is unrealistic to ask a witness giving trial testimony to erase information from his memory or to express a lack of certainty he no longer feels.[5]

Accordingly, the court will impose discovery sanctions upon plaintiffs as set forth below:

1. Defendants shall be permitted, if they so choose, to re-depose Drs. Herzog, Ocampo and Rodrigue and the cost of those depositions – including any expert or stenographic fees to be paid in connection therewith shall be paid by plaintiffs.

---

[5] Given that Dr. Herzog did not offer any causation or permanency opinions at his deposition and given the "one expert per issue" rule, the court reserves on whether to exclude any causation or permanency opinions from Dr. Herzog.

2. In addition, if defendants choose not to re-depose Drs. Herzog, Ocampo, or Rodrigue, they shall be reimbursed for any expenses they incurred for the original deposition of those witnesses, including any expert or stenographic fees.

3. Defendants shall be awarded reasonable attorneys fees for the time spent in re-deposing the witnesses in question and for the extra effort that plaintiffs' discovery violations have entailed. Defendants shall submit an application for attorney's fees within 30 days after additional depositions are completed.

4. Recognizing that Drs. Philips, Andrews, and Gray might have been deposed as witnesses even if they had not been designated experts, the court reserves on whether defendants are entitled to any expenses in connection with their depositions. Resolving that question should await the conclusion of the case.

5. Defendants shall have 30 days after the re-depositions of Drs. Rodrigue, Ocampo, and/or Herzog in which to designate additional expert witnesses. If defendants do not proceed with any further depositions, defendants shall have 45 days from the date of this order in which to designate additional experts in light of the affidavits submitted by plaintiffs.

The entry shall be:

The May 28, 2008 motion for summary judgment by defendant Hudson-RPM Distributors LLC is denied. The May 30, 2008 motions for summary judgment filed by both defendants are denied. Defendants' *in limine* motions addressed to Drs. Andrews, Phillips and Gray are granted without opposition. On defendants' motions *in limine* addressed to Drs. Herzog, Ocampo, and Rodrigue, discovery sanctions are ordered as set forth above.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     January  2 , 2009

Thomas D. Warren
Justice, Superior Court

PHILLIP BIXBY ESQ
PO BOX 4726
PORTLAND ME 04112



ie 04112-0267

MARK FRANCO ESQ
PO BOX 4630
PORTLAND ME 04112

DAVID MARCHESE ESQ
477 CONGRESS STREET SUITE 1104
PORTLAND ME 04101

MICHAEL WAXMAN ESQ
PO BOX 375
PORTLAND ME 04112