STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland, ss. Clerk's Office

JUL 2 1 2015

RECEIVED

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-14-62

JOHN REDMOND,

Plaintiff,

v.

CONSTANCE GALLI,

Defendant.

**ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

Defendant Constance Galli moves for summary judgment under M.R. Civ. P. 56, claiming that she is entitled to a judgment of a matter of law as to Plaintiff John Redmond's premises liability negligence claim. The Court held a hearing on this matter on March 5, 2015.

The Plaintiff fell while carrying a piece of slate up the Defendant's basement stairs. The issues in this case are whether the stairs were a dangerous condition on the property, whether the Defendant knew or should have known about the dangerous condition, and whether the dangerous condition was the proximate cause of the Plaintiff's injuries.

## BACKGROUND

1. The Parties

On February 4, 2012, the Plaintiff John Redmond and his wife went to the Defendant Constance Galli's house for a visit. PASMF ¶ 56. During the visit, the Defendant asked the Plaintiff to help her carry a piece of slate upstairs from her

1

basement. PASMF ¶ 58. They went into the basement together. The Plaintiff had never before entered the Defendant's basement. POSMF ¶ 61.

## 2. The Incident

When the Plaintiff descended the basement stairs, he noted that the stairs were old, and he felt them "squish" under his weight. POSMF ¶ 14. Although some discrepancy exists as to the exact dimensions of the slate, it was at least a few feet square. The slate weighed approximately thirty to fifty pounds. POSMF ¶¶ 67, 68. The Plaintiff agreed to carry the slate, and he told the Defendant that it was not too heavy. DSMF ¶ 25. The Defendant knew that the slate had a sharp edge. POSMF ¶ 65.

The Defendant returned upstairs to the kitchen. POSMF ¶ 72. The Plaintiff then grabbed the slate with his hands, covering his right hand with a facecloth to protect his hand from the sharp edge of the slate. POSMF ¶ 53. When ascending the stairs carrying the slate—at about the third, fourth, or fifth step from the lower landing—the Plaintiff testified that the felt a "jolt," that the "stairs moved," the "staircase moved," that the "stairwell just shifted. It moved." POSMF ¶ 36; PASMF ¶ 74. Consequently, the Plaintiff's grip slipped, and the slate embedded into his wrist. (Pl.'s Exh. A, Redmond Dep. at 32:23) The Plaintiff suffered significant injuries requiring surgery. PASMF ¶ 115.

## 3. The Stairs

The Defendant owned the house for about four months prior to the accident. DSMF ¶ 2. She testified that she never felt any instability while on the stairs. DSMF ¶ 8, 48, 49. Before the accident, she had personally removed carpeting and linoleum from the stairs, including many nails. DSMF ¶ 5. With the carpeting and linoleum removed, the stairs were bare, solid wood. DSMF ¶ 6. The Defendant knew that two cracks existed on

2

separate steps of the stairs, but the Plaintiff does not maintain that those cracks contributed to his injuries. PASMF ¶ 89; DRSMF ¶ 89; DSMF ¶ 40.

4. The Expert

Post accident, the Plaintiff hired a safety expert to inspect and test the stairs. The expert, Robert Flynn, is a safety and risk manager for the Maine Merchant's Self-insured Worker's Compensation Trust, and he makes field visits to make safety inspections. Flynn performed his analysis in September, 2014—two and a half years after the accident. POSMF ¶ 91. From an inspection of the staircase structure, Flynn determined that the staircase was supported properly. (Pl.'s Exh. C, Flynn Dep. 10:22–11:4) The staircase did not shake when he put his weight against it. (Pl.'s Exh. C, Flynn Dep. at 9:16–23)

Upon finer evaluation, however, Flynn found that the steps of the stairs depress under weight. The baseline standard for stairs, he testified, is that the steps should not depress to any appreciable degree. PASMF ¶ 101; DOSMF ¶ 101. However, Flynn's measurements showed a quarter-inch compression in the fourth step, which was unacceptable in his opinion. PASMF ¶ 98. As to other steps, Flynn noted that they too compressed, but he made no measurements to quantify this compression. PASMF ¶ 100.

Also, Flynn found that the staircase violated the National Life Safety Code ("LSC"), which has been adopted as law in the State of Maine. PASMF ¶ 102–08. First, he discovered a lack of uniformity in the height of adjacent risers between each step, finding that the risers varied in height. Whereas the LSC allows a 3/16 inch variance between adjacent risers, the Defendant's stairs exceeded that height variance for many of the steps in her staircase. POSMF ¶ 105. Moreover, Flynn found that the Defendant's

3

stairs exceeded the height variance allowed by the LSC for variations across the whole flight, which should not exceed 3/8 inch. POSMF ¶ 107. In fact, the largest variation of riser heights over the course of the Defendants staircase was 1 inch, significantly greater than the 3/8 inch permissible under the LSC. POSMF ¶ 108.

Flynn furthermore read through the Plaintiff's deposition to form his opinions. PASMF ¶ 109. Flynn opined that the "shifting" that the Plaintiff felt was the flexibility/depression of the steps as he climbed. PASMF ¶ 109. He opined that the variations in riser height, combined with the steps' flexibility/depression ultimately contributed to this accident because it caused the Plaintiff to lose his balance and stumble. PASMF ¶¶ 110–114. In the end, though, Flynn admitted that he does not know exactly what caused the Plaintiff to fall. DRSMF ¶ 109.

5. Notice

The Plaintiff alerts the Court to some indicia that Defendant was on notice of the dangerousness of the stairs. First, the Defendant would have been aware of the significant weight difference between her and the Plaintiff. The Plaintiff weighed about 265 pounds and the Defendant about 110 pounds. The slate added at least 30 lbs. Also, the Plaintiff contends that the fact that the Defendant removed carpeting highlights the Defendant's close familiarity with the condition of the stairs. Moreover, the Defendant acknowledged that she saw cracks in the stairs. (Pl.'s Exh. B., Galli Dep. 34:2–25)[1] In addition, the Plaintiff maintains that the Defendant should have known that the stairs were not in compliance with the law (*i.e.* the Life Safety Code)—putting her on constructive notice that her stairs were a defective condition of her property. Nevertheless, Flynn noted that

---

[1] Again, the Plaintiff does not argue that the cracks contributed to his fall.

4

the Defendant was not required to have her home inspected before the accident. (Pl.'s Exh. C, Flynn Dep. 22:1–23:1) For what it is worth, the Plaintiff testified that the Defendant did not know that the stairs were unsafe. (Pl.'s Exh. B, Redmond Dep. 64:25–65:6)

## DISCUSSION

### 1. Standard of Review

Summary judgment is appropriate when review of the parties' statements of material facts and the record evidence to which the statements refer, considered in a light most favorable to the non-moving party, demonstrates that there is "no genuine issue of material fact [] in dispute," thereby meriting judgment as a matter of law for the moving party. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 48 A.3d 774; *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is *material* if it is "one that can affect the outcome of the case," and a fact issue is *genuine* "when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee*, 2012 ME 103, ¶ 12. A party who moves for summary judgment is entitled to a judgment only if the party opposed to the motion, in response, fails to establish a prima facie case for each element of his cause of action. *Id.*

### 2. Premises Liability

"Liability cannot be predicated on the mere happening of an accident. It does not necessarily imply negligence. *Duchaine v. Fortin*, 159 Me. 313, 318, 192 A.2d 473, 476 (1963). Here, the Plaintiff has alleged that the Defendant breached her duty of care to him

5

by "allowing a defective, dangerous and/or hazardous condition consisting of, but not limited to, an unstable and unsafe staircase, on the premises she owned located at 102 Veranda Street, Portland, Maine." (Compl. ¶ 14)

To prevail on a claim for negligence, a plaintiff must demonstrate a duty of care, breach of that duty, injury, and causation. *Estate of Smith v. Cumberland Cnty.*, 2012 ME 13, ¶ 16, 60 A.3d 759. A premises liability claim is a specific type of negligence claim, that can be summarized thusly: A landowner owes a positive duty of exercising reasonable care in providing a reasonably safe premises when he or she knows or should have known of a risk [to invitees] on her premises. *Budzko v. One City Ctr. Assocs. Ltd. P'ship*, 2001 ME 37, ¶ 11, 767 A.2d 310. Below, the Court analyzes whether the Defendant (a) had a duty of care (b) fell below the standard of care (c) and caused the Plaintiff's injuries.

a. Whether the Defendant Owed Duty to the Plaintiff as a Matter of Law

The question of duty is a legal question. *Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951. A duty certainly arises between an occupier of land and his or her invitee.[2] To the extent that the Defendant disputes the existence of a duty, her arguments go more towards whether the Defendant breached her duty, which is a fact to be resolved by the jury. It is for the jury to resolve whether the Defendant (1) knew or should have known (2) of a dangerous condition of the property and (3) failed to guard against that danger (4) proximately causing (5) damage.

---

[2] By statute in Maine, the duty owed to a social invitee is the same as the duty owed to a business invitee. *See* 14 M.R.S.A. § 159.

6

b. Whether the Plaintiff Has Produced Sufficient Evidence to Show that the Defendant Breached Her Duty to Provide a Reasonably Safe Premises

A landowner is not obliged to guarantee absolute safety, but must use ordinary care ensure the premises are safe and to guard against all reasonably foreseeable dangers, in light of the totality of the circumstances. *Coffin v. Lariat Assocs.*, 2001 ME 33, ¶ 8, 766 A.2d 1018.

The Court finds that a reasonable jury could conclude that the stairs posed an unreasonably dangerous condition in light of the circumstances, and that the Defendant failed to guard against those dangers. The Plaintiff felt the stairs "squish" beneath him on his way down. He felt a "jolt" and felt the "staircase shift." In addition, the Plaintiff procured an expert, Flynn, to evaluate the condition of the stairs first hand.[3] Flynn found that the stairs depressed noticeably when under the weight of a person, even though stair treads are not supposed to depress in any noticeable way. POSMF ¶ 97-101. Second, Flynn found that the condition of the stairway fell below the standards set by the Life Safety Code ("LSC"), as adopted by Maine law. He found the stairway to be in violation of the LSC because the stairs had varying riser heights between each step. In other words,

---

[3] Experts serve to help the jury understand the evidence by furnishing an opinion on factual issues. *See* M.R. Evid. 702 ("If specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."); *compare Mitchell v. Kieliszek*, 2006 ME 70, ¶ 13, 900 A.2d 719 (finding that a lay witness may only testify on matters "adequately grounded on personal knowledge or observation" while expert witnesses may give their opinions "based upon facts perceived by or made known to the expert at or before the hearing").

7

the steps were unevenly spaced. POSMF ¶ 104–08.[4] A reasonable jury could find that the stairs' pliability, combined with the LSC violations, amounted to a dangerous condition under the circumstances, which the Defendant did not correct. Furthermore, the violation of a safety statute is evidence of negligence, and a jury may draw an inference of negligence from this violation. *Dongo v. Banks*, 448 A.2d 885, 889 (Me. 1982); *see also Town of Stonington v. Galilean Gospel Temple*, 1997 ME 2, ¶ 10 (violation of safety ordinance is evidence of negligence). Furthermore, apart from the stairs, a jury could find it significant that the Defendant failed to provide the Plaintiff with protective gloves or other assistance. Accordingly, the Court finds that the Plaintiff has raised material facts from which a reasonable jury could conclude that the stairs were a dangerous condition on the property, and hence a breach of the Defendant's duty to provide a reasonably safe premises.

In addition, a reasonable jury could conclude that the Defendant should have known of the danger posed by the stairs under the circumstances. The accident occurred on the basement stairs of the Defendant's home, while the Plaintiff was performing a task at the Defendant's request. The Defendant asked the Plaintiff, who was about 150 pounds heavier than she, to carry an unwieldy, sharp piece of slate up the stairs without supervision or protective equipment. Moreover, the Plaintiff has submitted evidence that

---

[4] Flynn performed tests and observations on the Defendant's staircase in September, 2014, more than two and a half years after the accident. The rule is that the results of experiments are admissible if they are conducted under circumstances which bear a "substantial similarity" to those surrounding the event placed at issue in the trial. *State v. Hardy*, 489 A.2d 508, 511 (Me. 1985). "Further, any variation between the actual and experimental conditions is a factor affecting the *weight* of the evidence, rather than its admissibility." *Id.* (emphasis added). Although Flynn's analysis came two and a half years after the incident, he nevertheless employed common techniques to evaluate the Defendant's actual basement staircase. His inspection was not so unreliable such that the Court must exclude his evaluation. Accordingly, the Court finds that Flynn's expert testimony is helpful to the jury, and any shortcomings in his methods of testing is an issue of weight for the jury to consider.

8

the stairs may have been in violation of the LSC applicable to her home. Having recently personally removed carpeting and linoleum from the stairs, the Defendant had an opportunity to familiarize herself with the condition of her stairs, even if she was not specifically measuring for LSC violations. The evidence suggests that the Defendant was not required to have her house inspected for LSC violations before the accident. Although the Plaintiff admitted that the Defendant did not know the stairs were unsafe, his statement is not determinative. On a view of the totality of the circumstances, the Court finds that a reasonable jury could conclude that the Defendant at least *should* have known about the danger posed by the stairs on which the Plaintiff was injured.

To the extent that the danger might have been equally apparent to the Plaintiff as it was to the Defendant, the Plaintiff (although voluntarily assisting the Plaintiff) was obliged to divide his focus between the slate in his hands and the stairs on which he was climbing. Therefore, a view of the facts could lead a reasonable jury to conclude that the Defendant did not guard against the danger posed by the stairs, either by warning the Plaintiff or taking other action. *See* Alexander, *Model Jury Instructions* § 7-62 (4th ed. 2014) ("Even if an unsafe condition of the premises creates a risk of injury that is or should be apparent to persons on the premises, the owner of the premises has a duty to warn of or take other reasonable action [to correct or avoid the unsafe condition] if the owner should anticipate that persons using the premises will encounter the unsafe condition because it is advantageous to do so [or because the person is likely to be *distracted*].") (emphasis added; brackets in original); *see also Williams v. Boise Cascade Corp.*, 507 A.2d 576, 577 (Me. 1986). Summary judgment being an inappropriate mechanism for resolving factual issues, the Court must deny the Defendant's motion.

The facts of this case make it distinguishable from *Durham v. HTH Corp.*, in which the Law Court found that the Plaintiff failed to advance evidence from which a reasonable jury could conclude that the defendant restaurant should have known that a metal strip at the top of a flight of stairs posed an unreasonably dangerous condition. 2005 ME 53, 870 A.2d 577. The plaintiff presented the following evidence. She was a frequent guest of a restaurant, and she fell down a flight of stairs headed to the restaurant's restrooms sometime after midnight. *Id.* ¶ 2. She remembered that her boot "caught something" on the top stair as she was proceeding downstairs. *Id.* ¶ 3. Some time after the fall, her daughter noticed that a metal strip on the top stair was pulled or curled up. *Id.* The daughter informed the owner that this metal strip was the cause of the accident. The was no evidence of what the metal piece looked like prior to the accident, and the owner responded that "maybe" the metal strip was the cause. *Id.* ¶ 5. The metal strip had been replaced three years prior to the accident. *Id.* ¶ 4. Both the plaintiff and a restaurant bartender testified that the metal strip was dirty (but not that it was loose or raised). *Id.* In addition, two other restaurant patrons had fallen down the stairs in the past, but there was no evidence of the circumstances of those falls.

On this evidence, the Law Court affirmed the trial court's conclusion that the plaintiff did not establish prima facie evidence that the stairs were unsafe or that the defendant should have known that the stairs were unsafe. *Id.* ¶¶ 10. The court reasoned that the plaintiff did not bring evidence of an unreasonably hazardous condition or that the owner should have known about metal strip as presenting a tripping hazard. Because the metal strip was replaced just three years before this accident, "there was no evidence that the defendant had any reason to believe the strip was not in good working order." *Id.*

10

¶ 11. Also, the plaintiff did not testify that she tripped on the metal strip in particular. And further, the plaintiff's evidence "regarded the condition of the metal strip only *after* Durham's accident." *Id.* ¶ 10. Accordingly, the Law Court granted summary judgment in favor of the defendant.[5]

The case at bar is unlike *Durham* because the Plaintiff has brought forth evidence from which the jury could conclude that the Defendant was familiar with her stairs, which may have been out of compliance with the LSC at the time of the Plaintiff's injury. This aspect is consequential because the Defendant should have knowledge of the LSC—ignorance of the law being no excuse. In the same vein, the fact that the government has specifically codified a safety standard for the uniformity of steps in stairs strongly indicates that stairs with improper dimensions may pose a risk of harm to those who use them. Additionally, the Defendant accompanied the Plaintiff down the stairs. She asked him to perform a task that she knew would require him to encounter the stairs with a sharp object in his hands. Upon these facts, a reasonable jury could conclude that the Defendant failed to meet her positive duty to exercise reasonable care in guarding against dangers of which she should have known.

c. Whether the Plaintiff Has Produced Evidence of a Causal Connection between the Condition of the Stairs and the Plaintiff's Injury.

The Defendant argues that the Plaintiff has not produced evidence of causation either on his own or in conjunction with Flynn's testimony. "There must be some reasonable connection between the act or omission of the defendant and the damage

---

[5] The *Durham* court had no opportunity to evaluate the element of causation because the issue was not decided in the trial court below. Nevertheless, the Law Court noted that there was a lack of evidence on causation, in that Durham "testified that she did not know what caused her to fall, and no other evidence in the record indicates causation." *Id.* ¶ 9 n.2.

11

which the plaintiff has suffered." *Houde v. Millett*, 2001 ME 183, ¶10, 787 A.2d 757.

The Plaintiff must prove not only "cause in fact," but also "proximate cause."

> Evidence is sufficient to support a finding of proximate cause if the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence. The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment.

*Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778.

Here, the Plaintiff testified that he felt the stairs beneath him "squish" on the way down; and on the way up, he remembers a "quick jolt" on the third, fourth, or fifth step that caused his hand to slide off, (SMF ¶ 37); explaining further, he says that the "stairwell just shifted." The Plaintiff did not explain exactly how he lost stability, but such precision is not required of a lay witness. A lay plaintiff is not obligated to explain the physical forces at work during his or her fall, but rather only what he or she saw and experienced. His narration can support a finding that his injuries resulted from defective stairs. *Marcoux*, 2005 ME 107, ¶ 26 (discussed infra); *see also Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 2, 6, (discussed infra). It is well within the ken of the jury, who have themselves climbed stairs, to find that uneven or shaky stairs can upset one's balance and motor, and in fact did so here.

In addition, the Plaintiff's expert Flynn opined that the "shifting" that the Plaintiff felt was the treads of the stairs giving way under his weight. Correspondingly, he opines that the variation in riser heights would have compromised the Plaintiff's expectation of where to place his feet. Thus, Flynn concludes that the flexibility of the steps combined

12

with the varying heights of the risers contributed to the Plaintiff's missteps and subsequent injury.

Here, Flynn had a more than adequate factual basis on which to render his opinion that the condition of the stairs proximately caused the Plaintiff's injuries. Flynn examined the Plaintiff's account of the accident, examined the staircase in question, and performed tests on the staircase. His opinion that the Plaintiff fell as a result of defective stairs is not mere conjecture or guesswork, but rather is grounded in the facts that he adduced by examining evidence reasonably relied upon by safety experts. His testimony would assist the jury to decide the issue of causation, and is therefore admissible. "[I]t is well-established that an expert need not be able to state his opinion with any special degree of certainty. The degree of certainty goes to the weight and not the admissibility of the evidence." *Kay v. Hanover Ins. Co.*, 677 A.2d 556, 558–59 (Me. 1996).[6]

Before this Court reaches a final conclusion on the issue of causation, the Court views the evidence in this case against the backdrop of the case law of causation.

The slip-and-fall case of *Marcoux v. Parker Hannifin/Nichols Portland Div.*, 2005 ME 107, 881 A.2d 1138, shows the necessary quanta of evidence the plaintiff—who can recall his or her fall—must show to survive summary judgment on the issue of causation. The plaintiff Marcoux presented the following evidence:

> [She] noticed, to her right, a green stain on the floor by the machine and, to her left, a bucket without any mops in it. The stain was liquid and was

---

[6] The Court does not accept the Defendant's argument that Mr. Flynn, for lack of a degree in biomechanics or other physiological science, is unqualified to render an opinion as to why the Plaintiff fell. M.R. Evid. 702 ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."). The Plaintiff designated Flynn to testify as to causation. Flynn performs safety inspections, and has specialized knowledge about the dangers of poorly constructed stairs. Last, if the Defendant truly contests Flynn's reliability as an expert on causation, a proper *Daubert*-type hearing would provide the parties a full opportunity to argue the matter.

13

about the size of a "small serving plate." To avoid the stain, Marcoux walked between the stain and the bucket. She lost her footing and fell.

*Id.* ¶ 3.

[S]he saw a green stain, the stain was dark green but its color faded toward its edges, she tried to avoid the stain, she felt something slippery when she fell, she noticed a dark stain near her after she fell, and she later noticed a stain on the right knee of the pants that she had been wearing....When viewed in the light most favorable to Marcoux, the evidence could reasonably support a finding that the stain caused her fall.

*Id.* ¶ 26 (internal citations omitted).

Notably, the plaintiff in *Marcoux* did not have direct knowledge of exactly where she stepped. Nor did she explain the mechanics of her fall apart from the fact that she slipped. Nevertheless, the Law Court found that she established a reasonable connection between the stain and her fall. Likewise, the Plaintiff in the case at bar makes the reasonable connection. He felt the stairs squish on his way down, described that they shifted under his weight on his way up, and that he consequently lost his balance and cut himself thereby. From this alone, causation can be inferred, under *Marcoux*.

In addition, any shortcomings in the Plaintiff's recollection of causation can be bolstered by other reliable evidence. In *Rodrigue v. Rodrigue*, a plaintiff sued for injuries after falling down her landlord's basement stairs. She recalled that "she thought she slipped when she stepped on some plaster or other debris, but she does not know what she stepped on. She states that she was unable to hang onto the loose handrail." 1997 ME 99, ¶ 6. Although he did not witness the fall, her son also testified that the stairs were littered with debris. *Id.* ¶ 15. The court denied the defendant's motion for summary judgment, finding that "the plaintiff presented testimony that, if believed, could support a finding that her injuries were caused by the defendant's lack of reasonable care" in

14

maintaining the condition of the stairs. *Id.* The court borrowed reasoning from *Thompson v. Frankus*, 151 Me. 54, 58, 115 A.2d 718 (Me. 1955) (emphasis added):

> A plaintiff may under many circumstances be completely unable to remember or recount or explain an accident, but may nevertheless recover if the deficiency is *met by other reliable evidence.* Such evidence may be direct or circumstantial. It may come from eye witnesses or known physical facts. It may raise reasonable inferences which satisfy the burden of proof.

Thus, despite there being no eyewitnesses to Rodrigue's fall, the court found that her recollection that she stepped on debris, in conjunction with her son's consistent testimony about the presence of debris, provided sufficient evidence of causation to survive summary judgment. In the case at bar, the Plaintiff has supplemented any deficiencies in his own memory of his fall with independent evidence on the issue of causation—the expert opinion of Flynn.

Moreover, the case at bar is wholly dissimilar to *Addy v. Jenkins*, 2009 ME 46, 969 A.2d 935, in which the Law Court found that the plaintiff did not present sufficient evidence of causation where he had absolutely *no recollection* of how he fell on the job. The plaintiff fell while working as a subcontractor for the defendant, who provided the plaintiff with a shoddy scaffold.[7] The plaintiff ascended the scaffolding to the roof of the building. *Id.* ¶ 4. When he finished work, he began his descent from the roof, and fell. He could not remember whether he fell from the roof or from the scaffolding. *Id.* ¶ 5. Under the rule that the plaintiff must show some "reasonable connection" between the defendant's breach and the damages suffered, the court held that the plaintiff failed to show a reasonable connection between the defective scaffolding and his fall. The court

---

[7] The Law Court easily concluded that the lack of railings, etc. on the scaffolding was sufficient evidence of breach.

15

continued, "Addy, like Durham,[8] has presented evidence of only *from where* he fell, rather than *how* he fell." *Id.* ¶ 14 (emphasis in original). Accordingly, the Court granted summary judgment for the defendant.

Following *Addy*, a sister Superior Court recently ruled on a case in which no one witnessed an elderly plaintiff suffered fatal injuries after falling down a flight of stairs. *Smith v. Salvesen*, 2015 Me. Super. LEXIS 20 (Jan. 23, 2015). The plaintiff and her husband were invited to stay as guests in a house to which they had apparently never been before. They arrived at dark, the house was unoccupied, and the couple had a code to enter the house. *Id.* at *2. They had a choice of any bedroom on the second floor. Unbeknownst to them, the bedroom that they chose had a private staircase within. *Id.* During the night, the plaintiff's husband awoke to his wife's scream and arrived to see her at the bottom of the stairs. *Id.* at *3. The plaintiff's expert familiar with the Life Safety Code testified that the stairs had several defects, including riser height inconsistency. However, the court found that a plaintiff provided insufficient evidence that these defects caused the plaintiff to fall because like *Addy*, and unlike *Rodrigue*, the plaintiff had no evidence that the condition of the stairs caused her fall or that she even came in contact with the stairs prior to her fall. *Id.* at *13–14. Accordingly, the court granted summary judgment for the defendant.

Neither *Addy* nor *Smith* guide this Court's decision in the case at bar because the Plaintiff here remembers the events at issue. Although he does not detail the precise mechanics of his stumble, the Law Court's analyses in *Marcoux* and *Rodrigue* do not require him to show such specificity in order to survive summary judgment. Moreover,

---

[8] The plaintiff Durham who caught her boot on the stair in the restaurant. 2005 ME 53.

16

the Plaintiff was carrying a cumbersome and sharp piece of slate at the time he fell, which may explain his imperfect memory as to the interaction between his feet and the stairs. Furthermore, the Plaintiff brings expert testimony to explain why the objective attributes of the stairs could explain the Plaintiff's perception that the stairs "shifted" or "jolted."

The Defendant argues that the Plaintiff failed to assert that the stairs were uneven, that he misplaced his feet, that he tripped on them, or that the steps depressed too far (which is what the Plaintiff's expert concludes). PASMF ¶¶ 109–114. The Defendant also argues that the expert's opinion about the mechanics of how the Plaintiff fell is mere guesswork. The Court disagrees with the technical arguments advanced by the Defendant. Although the basis for Flynn's opinion as to causation may be subject to attack, his testimony is so far admissible under Rules 702 and 703, and the lack of a more substantial basis to support his opinion goes to the weight of the evidence. *Garland v. Roy*, 2009 ME 86, ¶ 22; *see also Currier v. Toys 'R' Us, Inc.*, 680 A.2d 453, 455 (Me. 1996) (stating that it s the jury's role to weigh the evidence and determine witness credibility). It is the jury's role to reconcile any deficiencies in the Plaintiff's proofs. This Court can simply conclude that the Plaintiff has presented sufficient evidence of causation to defeat judgment as a matter of law for the Defendant.

## CONCLUSION

Here, a reasonable jury could find that the Defendant's basement stairs were a dangerous condition of which she should have known. Moreover, a reasonable jury may decide to accept the Plaintiff's evidence of causation and thereby reach the conclusion,

17

without speculating, that the defective stairs played a substantial part in the Plaintiff's fall. In all, the Plaintiff has brought forth sufficient evidence on each required element of his premises liability claim. Having met his burden at summary judgment, the Court must deny the Defendant's motion.

The entry is:

1. Defendant Constance Galli's M.R. Civ. P. 56 Motion for Partial Summary Judgment is **DENIED**.

2. This Order shall be incorporated into the docket by reference pursuant to M.R. Civ. P. 79.

Dated: July 21, 2015

_____
Hon. Roland Cole
Justice, Superior Court

18

JOHN REDMOND VS CONSTANCE GALLI
UTN:AOCSsr -2014-00119.              CASE #:PORSC-CV-2014-00062
---------------------------------------------------------------------------

01 0000003163              BROGAN, JONATHAN
   TWO CANAL PLAZA PO BOX 4600 PORTLAND ME 04112-4600
   F      CONSTANCE GALL.                        DEF      RTND    02/28/2014

02 0000008011              THOMPSON, PETER
   92 EXCHANGE STREET 2ND FLOOR PORTLAND ME 04101
   F      JOHN REDMOND                           PL       RTND    02/12/2014

03 0000009593              MANN, CHRISTIANA E
   43 US RTE 1 FALMOUTH ME 04105
   F      JOHN REDMOND                           PL       RTND    02/12/2014