CLIFTON THOMPSON
*vs.*
MARY C. FRANKUS

ANNA B. THOMPSON
*vs.*
MARY C. FRANKUS

Androscoggin.    Opinion, June 15, 1955.

*Frank M. Coffin,* for plaintiff.

*Powers & Powers,* for defendant.

SITTING: FELLOWS, C. J., WEBBER, BELIVEAU, TAPLEY, JJ. WILLIAMSON, J., did not sit.   MR. JUSTICE TIRRELL sat on

this case and participated in conferences, but died before the opinion was submitted to him.

WEBBER, J.   In these two cases, considered together for convenience, husband and wife seek damages for injuries to the wife.   These same cases were before us on a general motion for new trial after plaintiffs' verdicts in *Thompson* v. *Frankus*, 150 Me. 196, 107 A. (2nd) 485.   In granting new trial we did so solely upon the ground that no instructions whatever were given the jury as to the duty of a landlord to light common stairways within his control.   We neither held nor intimated that there was not sufficient evidence favorable to the plaintiffs to warrant submission to the jury under adequate instructions.   Upon the retrial, the evidence presented differed not materially from that which appeared in the first record.   Nevertheless at the close of the evidence the presiding justice directed verdicts for the defendant and plaintiffs' exceptions bring the matter before us for the second time.

The facts were fully stated in our prior opinion.   Briefly stated, the evidence now before us, viewed in the light most favorable to plaintiffs, would have justified jury findings that the plaintiff wife was injured while attempting to descend an unlighted stairway controlled by the defendant landlord and maintained for the common use of her tenants; that this plaintiff was an invitee of a tenant; that the linoleum stair covering was badly torn, loose and full of holes, which condition was known to the defendant; that the plaintiff lighted a match before stepping from a stair covered with the defective linoleum and stumbled or tripped and fell to the foot of the stairway; and that there was no other means of egress available to the plaintiff who sought to leave the premises to return to her home.   Both plaintiffs showed resulting damages.

It is almost universally held that a landlord who has retained control of common stairways owes to his tenants and

their invitees the duty of exercising ordinary care to keep such stairways reasonably safe for their intended use. 32 Am. Jur. 561, Sec. 688 (Note 9 and cases cited) ; *Sawyer* v. *McGillicuddy,* 81 Me. 318; *Austin* v. *Baker,* 112 Me. 267; *Toole* v. *Beckett,* 67 Me. 544; *Miller* v. *Hooper,* 119 Me. 527; *Robinson* v. *Leighton,* 122 Me. 309; and *Smith* v. *Preston,* 104 Me. 156. "The opinion in *Smith* v. *Preston, supra,* states the rule of liability thus: 'in all cases the criterion of liability is the obligation to maintain and repair with the right of control for that purpose.' " *Jacobson* v. *Leventhal,* 128 Me. 424 at 426.

In Massachusetts, the duty is limited to maintaining the premises in as good condition as they were or appeared to be in at the inception of the tenancy. 32 Am. Jur. 572, Sec. 696. Cases assembled in the footnote include *Rosenberg* v. *Chapman National Bank,* 126 Me. 403. It is thereby suggested that Maine has adopted the minority doctrine of Massachusetts. The holdings of the *Rosenberg* case go no farther than its facts. The case holds that in the absence of contract or agreement, the landlord owes no duty to tenants to remove natural accumulations of snow and ice from outside common stairways. It further holds that no duty is owed to tenants to make *the structural design or plan* any more safe than it was at the time of letting. Specifically, the structural plan having included no gutter over the stairway at the inception of tenancy, the tenants could not demand that one be added during the tenancy. The distinction, however, was clearly made in *Miller* v. *Hooper, supra,* at page 529: "As applied to the *plan of construction* this position is sound. An owner may build a tenement house with stairways which because of steepness or for other obvious structural reasons are inconvenient or even unsafe. The tenant cannot exact any change. If such stairways need to be repaired or rebuilt, the owner is not required to make them safer or more convenient. But the application of this doc-

trine to repairs made necessary by *wear, breaking or decay* is opposed to the great weight of authority. *We conceive the true rule to be that the owner must exercise due care to keep in reasonably safe repair, stairways and passage ways which remain under his own control."* (Emphasis supplied.) A like duty was of course owed by the landlord to the tenants' invitees.

There is evidence in the record before us upon which the jury could have found that the defendant had negligently failed to repair the worn and torn linoleum stair covering which had become dangerously defective by reason of "wear, breaking or decay." The evidence would have further supported a jury finding that the dangerous condition thus created by the negligence of the landlord was so enhanced and aggravated by a complete absence of lighting as to give rise to a further duty owed by the defendant to the tenant's invitees to light the stairway. *Thompson* v. *Frankus, supra.* The defendant's negligence, or lack of it, was therefore a jury question upon this evidence.

Likewise the issue of the contributory negligence of plaintiff wife was a jury question. She was under some urgency to return home. No other means of egress was available. She lighted a match which enabled her to look where she was going before taking the step which resulted in her fall. She did not wait for the tenant to bring a light. She proceeded over an unlighted stairway. It is for the jury to say whether she used that care and caution which an ordinarily prudent person would have exercised under the same circumstances and having the same urgency to leave the premises. We cannot say that she was guilty of contributory negligence as a matter of law. Our court has frequently recognized that "urgency" is a factor which may be considered in appraising the care exercised by a party. In *Rosenberg* v. *Bank, supra,* at page 408 it was said: "Under some circumstances of emergency or urgency a model of

prudence and care might knowingly use or attempt to use a stairway negligently made or left very slippery. But the evidence in this case discloses no emergency and no urgency." Again in *Temple* v. *Congress Square Garage, Inc.*, 145 Me. 274 at 277 we said: "No urgency existed so far as the record discloses that compelled her (plaintiff invitee) to proceed from the elevator to the friend's room." See also *Agosta* v. *Granite City Real Estate Co.*, 116 Vt. 526, 80 A. (2nd) 534 at 536, wherein emphasis was placed on the fact that "the plaintiff necessarily had to return home and had no alternative but to proceed." *Bailey* v. *Fortugno*, 151 A. (N. J.) 484.

The defendant contends that there is no evidence upon which the jury could have found that any negligence of hers was the proximate cause of the plaintiff's fall. Plaintiffs' counsel suggests that in directing a verdict for defendant the presiding justice below was persuaded to that action by the failure of the plaintiff wife to state specifically what caused her to stumble as, for example, that she slipped on loose linoleum or caught her foot on torn linoleum or in a hole in the stair covering. The record is silent as to the reasons which weighed in the mind of the justice below. However, defendant's counsel contend that "if the plaintiff, who knew and could see what she was doing, cannot tell the jury what caused her to fall, how can a jury answer this question without speculation, conjecture or guessing?" The fallacy of this argument is readily apparent. A plaintiff may under many circumstances be completely unable to remember or recount or explain an accident, but may nevertheless recover if the deficiency is met by other reliable evidence. Such evidence may be direct or circumstantial. It may come from eye witnesses or known physical facts. It may raise reasonable inferences which satisfy the burden of proof. *Pauley* v. *Brockton Savings Bank*, 26 N. E. (2nd) (Mass.) 345. "There was no direct evidence as to the cause of decedent's

fall. The sole claim of the defendant is that in the absence of other evidence than that stated, the jury could not find that the fall of the deceased was caused by the defective condition of the stairway. A jury cannot base their conclusions upon guess or speculation, but they are entitled to draw reasonable inferences and their verdict must stand if the evidence is such as to justify in their minds 'a reasonable belief of the probability of the existence of the material facts.' " *White* v. *Herbst,* 128 Conn. 659, 25 A. (2nd) 68. To hold otherwise would be but to invite perjury on the part of plaintiffs who in all honesty do not know or cannot recall exactly what did happen. An examination of cases where the plaintiff's inability by his own testimony to make out a case has defeated recovery will disclose that the deficiencies in proof were not supplied by other independent evidence. So here there was evidence of stair covering upon the stair where plaintiff tripped (as well as other stairs) which by reason of tears and holes might, especially in darkness, cause one to trip. There is evidence that the plaintiff, proceeding slowly and cautiously by the light of a match, did stumble and trip and fall. The jury might reasonably infer that she stumbled or tripped *over* the defective covering and *because* of the defects. In a legal sense, the consequences of such a hazardous condition were readily foreseeable. "The universal rule is that if the defendant is to be held answerable in damages to the plaintiff, the negligence must be the proximate cause of the injury suffered. To lay down a general definition of proximate cause, which will furnish a solvent for all cases, is, however, well nigh impossible. Each case presents its own problem. *Page* v. *Bucksport,* 64 Me. 51; *Fairbanks* v. *Kerr,* 70 Pa. 86. The most usually cited rule is that the injury must be the natural and probable consequence of the negligence. *Marsh* v. *Great Northern Paper Co.,* 101 Me. 489, 502. But even this formula has its limitations and exceptions, as is pointed out by Judge Smith in an article in 25 Harv. L. Rev. 103, 115. As he shows, a

wrong-doer may in some instances be liable for a probable consequence because it was foreseeable, even though it may not have occurred in the ordinary course of nature. This phrase, however, does furnish a reasonable guide for the solution of the vast majority of cases. It is not necessary that injury in the precise form suffered should have been foreseen; it is only essential that, viewing the occurrence in retrospect, the consequences appear to flow in unbroken sequence from the negligence." *Hatch* v. *Globe Laundry Co.*, 132 Me. 379 at 382. Applying these basic rules to the evidence before us, it was for the jury to determine whether or not the defendant's negligence was the proximate cause of the plaintiff's fall.

It remains only to examine some of the cases on which the defendant relies.

*Olsen* v. *Portland Water District*, 150 Me. 139, is readily distinguishable. Here the plaintiff stepped backward without looking onto a perfectly obvious manhole covering in broad daylight. No negligence of the defendant was shown. There was no evidence of knowledge of the defendant that the manhole cover had become raised. Upon the evidence, a jury could not properly have reached any other conclusion than that the accident was caused entirely by the thoughtless inattention of the plaintiff.

*Deojay* v. *Lyford*, 139 Me. 234, was a case in which no affirmative acts of negligence of the defendant were shown and it was held that *res ipsa loquitur* could not be applied to airplanes while landing merely because they deviated somewhat in course.

In *Winterson* v. *Pantel Realty Co.*, 282 N. W. (Neb.) 393, the evidence offered no explanation as to how the plaintiff fell. As the court said on page 396: "For aught we know she (the plaintiff) may have done any number of things that would have caused the accident and for which the de-

fendant would not have been liable." This is quite different from a situation where a disinterested witness saw the plaintiff trip on a stair where a dangerous condition likely to cause tripping was observed. If the jury elected to believe the plaintiff and her eyewitness, they might properly have found upon this evidence that the plaintiff here did *not* do any of the things which might otherwise have caused her to fall quite apart from the negligence of the defendant.

In *Alling* v. *Northwestern Bell Tel. Co.,* 194 N. W. (Minn.) 313, plaintiff advanced the theory that lightning had hit a tree, jumped to a car and thence to a wire and thence to the decedent. The wire remained intact. Several experts testified that it was impossible for the wire to have carried the charge. The plaintiff's expert admitted that no one could say what lightning would do or where it would go. The court properly held that plaintiff's claim advanced no further than speculation or conjecture. The court well stated the rule at page 314, which we believe is applicable: "The burden is on plaintiff to show that it is more probable that the harm resulted in consequence of something for which the defendant was responsible than in consequence of something for which he was not responsible. If the facts furnish no sufficient basis for *inferring* which of several possible causes produced the injury, a defendant who is responsible for only one of such possible causes cannot be held liable." (Emphasis supplied). In the case now before us, an inference drawn by a jury that plaintiff's fall resulted directly from a defective stair covering coupled with the absence of lighting would rest upon credible evidence rather than upon mere conjecture, surmise and speculation.

We therefore conclude that there was evidence which, if believed by the jury, would have sustained plaintiffs' burden of proof on each essential issue. The cases should have been submitted to jury determination under proper instructions.

*Exceptions sustained.*