2009 ME 46

**Brian ADDY et al.**

v.

**JENKINS, INC.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Feb. 28, 2008.
Decided: April 30, 2009.

---

Robert J. Stolt, Esq., James A. Billings, Esq., Lipman, Katz & McKee, P.A., Augusta, ME, for Brian Addy and Dawn Addy.

Frederick C. Moore, Esq., Law Offices of Federick C. Moore, Portland, ME, for Jenkins, Inc.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: CLIFFORD, ALEXANDER, MEAD, and GORMAN, JJ.

Dissent: LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Brian Addy appeals from a summary judgment in favor of Jenkins, Inc. entered in the Superior Court (Kennebec County, *Marden, J.*) on Addy's negligence complaint in connection with injuries he sustained when he fell at Jenkins's construction site.[1] Contending that the court erred in entering the summary judgment, Addy argues that the evidence generates genuine issues of material fact as to whether Jenkins breached a duty of care, and whether that breach was the proximate cause of Addy's injuries. Although Addy has presented sufficient evidence to preclude summary judgment as to Jenkins's breach of its duty of care, we agree with the Superior Court that Addy has failed to establish a prima facie case that Jenkins's breach was the proximate cause of Addy's injuries, and we affirm the judgment.

## I. BACKGROUND

[¶ 2] The evidence before the court on summary judgment, viewed in the light most favorable to Addy, as the party against whom summary judgment was entered, reveals the following. *See Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. On October 11, 2002, Addy was injured when he fell while working as a subcontractor for Jenkins, which was doing construction work on a building in Bangor. Jenkins had provided and erected three-story staging to be used during the project. Jenkins had not installed safety equipment, including rails, platforms, or ladders, to the staging that had been erected on the side of the building on which Addy was assigned to work. The staging was also not tied to the building on that side. Jenkins had erected the staging about two weeks before the fall that injured Addy.

[¶ 3] Addy began work on a Monday, and he fell on that day as he was ascending the staging. He reported this fall to Jenkins and asked Jenkins to install the safety equipment on that portion of the building. That first fall is not an issue in this case.

[¶ 4] Addy fell again on Friday of the same week, and in that fall sustained the injuries of which he complains in this action. On the day of the fall, Addy spent about five hours on the highest level of the staging as he worked on the top of the wall. He then ascended to the roof of the building and spent about an hour working on the chimney just before he fell.

[¶ 5] There were no witnesses to Addy's fall, and Addy himself has little memory of his fall. In his deposition, he testified that he could not remember whether he fell from the staging, from the roof of an adjacent mechanical building, or from the ladder leading to the roof of the adjacent mechanical building. Addy later submitted an errata sheet stating that he did not fall from the roof of the mechanical building. In his errata sheet, he recalled that he was on the roof of the main building. He further testified that he fell to the ground while climbing down the staging. He acknowledges that he does not remem-

---

1. Addy's wife, Dawn Addy, has also filed a claim for loss of consortium; that claim is not in issue in this appeal.

ber how he stepped off the roof or how he fell.

[¶ 6] The Superior Court entered a summary judgment in favor of Jenkins based on its conclusion that Addy had provided insufficient evidence that: (1) Jenkins's failure to complete the staging constituted a breach of its duty to Addy, and (2) any such breach by Jenkins was the direct and proximate cause of Addy's fall and resulting injuries. This appeal by Addy followed.

## II. DISCUSSION

[¶ 7] We review de novo the grant of a summary judgment. *Efstathiou v. The Aspinquid, Inc.*, 2008 ME 145, ¶ 13, 956 A.2d 110, 116. We consider the evidence in the light most favorable to the party against whom the judgment was entered to determine if there are any genuine issues of material fact that preclude the entry of a summary judgment. *Id.*

[¶ 8] As the plaintiff and the party opposing summary judgment, Addy has the burden to establish a prima facie case for each element of his cause of action for negligence. *See Durham v. HTH Corp.*, 2005 ME 53, ¶ 8, 870 A.2d 577, 579. At the summary judgment stage, Addy must therefore establish a prima facie case that Jenkins owed a duty of care to him, that Jenkins breached that duty, and that the breach of that duty proximately caused injury to Addy. *See Crowe v. Shaw*, 2000 ME 136, ¶ 9, 755 A.2d 509, 512. As a defendant, Jenkins is entitled to a summary judgment in its favor if the evidence presented by Addy in opposition to the motion for a summary judgment would, if produced at trial, entitle Jenkins to a judgment as a matter of law. *See Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 7, 742 A.2d 933, 937–38.

### A. Negligence

[¶ 9] Negligence is generally defined as acting in a way that an ordinary, careful person would not act, or failing to do something than an ordinary, careful person would do, in the same situation. Alexander, *Maine Jury Instruction Manual* 7–61 at 7–62.2 (4th ed.2008); *see also Michaud v. Wood*, 1998 ME 156, ¶ 5, 712 A.2d 1068, 1069. The trial court concluded that Addy did not present sufficient evidence that Jenkins breached any duty it had to Addy. Addy did, however, present sufficient evidence at least to generate a genuine issue of material fact regarding whether Jenkins breached its duty to provide safe staging. Addy has established on a prima facie basis that Jenkins owed a duty to him to provide a safe workplace environment, which would include safe staging, and that Jenkins knew or should have known both that the staging lacked safety equipment and that Addy had previously fallen. This evidence is sufficient to resist summary judgment on the issue of whether Jenkins breached a duty of care. *See Fournier v. Rochambeau Club*, 611 A.2d 578, 579 (Me.1992); *see also Michaud*, 1998 ME 156, ¶ 5, 712 A.2d at 1069.

### B. Proximate Cause

[¶ 10] In order to successfully oppose a motion for summary judgment, however, Addy was also required to present sufficient prima facie evidence that Jenkins's breach of its duty of care was the proximate cause of Addy's fall, and thus his injury. *See Corey*, 1999 ME 196, ¶ 7, 742 A.2d at 937–38. This he has failed to do.

[¶ 11] The evidence presented to the court on the summary judgment motion is that Addy was working for Jenkins; that Jenkins had erected scaffolding next to a building on which Addy was working; and that the scaffolding had not been fully

completed and was missing some ladders, platforms, and railings. At the time of his injury, Addy had been working on the roof. Addy remembers that he stepped off the roof to begin his descent to the ground, that he fell to the ground, and that he woke up on the ground having suffered serious injury. Although Addy's evidence is somewhat contradictory, when viewed in the light most favorable to him, there is evidence that his fall was from the staging erected by Jenkins. His memory is otherwise unclear, however, and he does not remember how he fell or what caused him to fall. More specifically, he does not recall whether his fall was connected in any way to the absence of a ladder, platform, or railing on the staging, which are those very facts on which he relies to establish Jenkins's breach of its duty of care.

■ [¶ 12] In order to recover for tort damages, Addy must show "some reasonable connection between the act or omission of [Jenkins] and the damage which [Addy] has suffered." *Houde v. Millett*, 2001 ME 183, ¶ 10, 787 A.2d 757, 759 (quotation marks omitted). In *Houde* we stated:

> A defendant is entitled to a summary judgment if there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff. The mere possibility of such causation is not enough, and when the matter remains one of pure

speculation or conjecture, or even if the possibilities are evenly balanced, a defendant is entitled to a judgment.

*Id.* ¶ 11, 787 A.2d at 759 (citation and quotation marks omitted).

[¶ 13] In *Durham,* a case with facts similar to Addy's, the plaintiff, Durham, fell down a flight of stairs in a restaurant. *Durham,* 2005 ME 53, ¶ 2–3, 870 A.2d at 578. No one witnessed the fall. *Id.* ¶ 5, 870 A.2d at 579. Durham noticed that the metal strip at the top of the stairs was dirty, and there was evidence from several hours after the accident that a part of the metal strip on the top step had been pulled up, but there was no evidence establishing what the strip looked like before or at the moment of Durham's fall. *Id.* ¶¶ 3, 5, 870 A.2d at 578, 579. We affirmed the summary judgment entered by the Superior Court in favor of the defendants because of the insufficiency of evidence on the restaurant's negligence. *Id.* ¶ 11, 870 A.2d at 580. In doing so, we specifically noted that there was a "lack of evidence with regard to causation" in that the plaintiff "testified that she did not know what caused her to fall, and no other evidence in the record indicates causation." *Id.* ¶ 9 n. 2, 870 A.2d at 579–80.

[¶ 14] Like the plaintiff in *Durham,* Addy has failed to present sufficient evidence to establish causation in that he has failed to establish a connection between any defect in the staging and the injury he suffered. Addy, like Durham, has presented evidence of only *from where* he fell, rather than *how* he fell.[2]

---

**2.** The circumstances of Addy's fall are distinguishable from those in *Thompson v. Franckus (Thompson I),* 150 Me. 196, 107 A.2d 485 (1954) and *Thompson v. Frankus (Thompson II),* 151 Me. 54, 115 A.2d 718 (1955). In those matters, the plaintiff offered more evidence of causation than Addy offers here, namely, that the plaintiff attempted to descend the stairs of an apartment building, that

the stairs were in a dilapidated condition, that she "reached for a hand rail and found that there was none," and that she tripped and fell as she was descending the stairs. *Thompson I,* 150 Me. at 197–98, 107 A.2d at 486. Thus, the plaintiff in the *Thompson* decisions, unlike Addy, established a causal connection between the condition of the stairs and the

[¶ 15] Any finding that Addy's fall was caused by a defect in the staging would be based on speculation or conjecture. The Superior Court correctly entered a summary judgment in favor of Jenkins.

[¶ 16] The entry is:

Judgment affirmed.

SILVER, J., with whom LEVY, J., joins, concurring in part and dissenting in part.

[¶ 17] I concur that Addy has presented sufficient evidence to preclude summary judgment as to Jenkins's breach of its duty of care. However, I respectfully dissent from the remainder of the Court's conclusions.

[¶ 18] The Court suggests that a plaintiff must present direct evidence of proximate cause in order to withstand summary judgment, and that reasonable inferences are no longer permissible. The Court also suggests that a plaintiff who cannot remember an otherwise unwitnessed accident cannot rely on any inference, however reasonable, to obtain relief. If this were the case, this would reflect a significant departure from our prior case law, it would create a new and heightened burden with respect to the causation element of tort law, and it would put plaintiffs at a disadvantage for a lack of memory that may itself be an inextricable part of the accident and the injury.

[¶ 19] The Court does not permit Addy to rely on a reasonable inference to establish proximate cause, even though he presented evidence that he came into contact with a hazardous condition caused by Jenkins. This is directly contrary to our prior precedent, which permits reasonable inferences. *See Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778, 780–81. "Proximate cause is an action occurring in a natural and continuous sequence, uninterrupted by

an intervening cause, that produces an injury that would not have occurred but for the action." *Cyr v. Adamar Assocs. Ltd. P'ship*, 2000 ME 110, ¶ 6, 752 A.2d 603, 604. Proximate cause is generally a question of fact for the jury. *Houde*, 2001 ME 183, ¶ 11, 787 A.2d at 759. At the summary judgment stage, the non-moving party is entitled to the full benefit of all favorable inferences. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22. There is no basis for denying Addy the benefit of the favorable inference that the lack of safety equipment caused him to fall.

[¶ 20] The Court disregards the well-established, methodical, and rigorous analysis we previously used to distinguish permissible inferences from speculation. *See Marcoux v. Parker Hannifin/Nichols Portland Div.*, 2005 ME 107, ¶¶ 24–27, 881 A.2d 1138, 1145–46; *Houde*, 2001 ME 183, ¶ 11, 787 A.2d at 759; *see also* 57A Am. Jur.2d *Negligence* 444 (2004). Instead, the Court concludes, without any analysis, that an inference of causation would be speculative. An appropriate and adequate analysis should be conducted in the first instance by the trial court upon a motion for summary judgment. *Marcoux*, 2005 ME 107, ¶¶ 24–27, 881 A.2d at 1145–46; *Houde*, 2001 ME 183, ¶ 11, 787 A.2d at 759. If an inference is rational and flows logically from the evidence, it may be considered by the fact-finder. *Estate of Hersum v. Kennebec Water Dist.*, 151 Me. 256, 263, 117 A.2d 334, 338 (1955). If there are multiple reasonable inferences, and they are not equally probable, the fact-finder may consider them. *See Merriam*, 2000 ME 159, ¶ 8, 757 A.2d at 780–81. It is only if the inferences are equally probable that the evidence is speculative. *Id.; Estate of Hersum*, 151 Me. at 263, 117 A.2d at 338. The fact-finder may not select

absence of the hand rail, and the fall she

sustained.

from among equally probable inferences. *Merriam,* 2000 ME 159, ¶ 8, 757 A.2d at 781; *Estate of Hersum,* 151 Me. at 263, 117 A.2d at 338.

[¶ 21] The Court has come to a decision on the facts presented by Addy without the benefit of any such analysis. Instead, it simply concludes that Addy's lack of direct evidence of causation, particularly his lack of memory about the specifics of the fall, requires summary judgment in favor of Jenkins. The Court provides no discussion whatsoever of the role of inference in this case. It is entirely reasonable to infer causation given that (1) the lack of safety equipment on the staging is undisputed; (2) Addy fell while descending the staging; and (3) no competing inference has been advanced by Jenkins. As the First Circuit recently discussed at some length, it is fundamental that when a non-moving party on summary judgment presents a factually well-supported and reasonable inference, that party is entitled to the benefit of any such favorable inference at the summary judgment stage, and is entitled to have the inference presented to the jury. *Chadwick v. Wellpoint, Inc.,* 561 F.3d 38, 46–48 (1st Cir.2009).

[¶ 22] The Court's refusal to permit any inference on the facts presented by Addy runs counter to several of this Court's prior decisions. The Court erroneously relies upon *Durham* and *Houde,* because there was no significant evidence of a dangerous condition in either of those cases. *Durham,* 2005 ME 53, ¶¶ 3, 10, 870 A.2d at 578, 580; *Houde,* 2001 ME 183, ¶¶ 1, 2, 12, 787 A.2d at 758, 759–60. In *Durham,* there was no evidence that a metal strip on a staircase created a dangerous condition. *Durham,* 2005 ME 53, ¶¶ 3, 10, 11, 870 A.2d at 578, 580. *Durham* is in stark contrast to the present case, in which Addy fell while descending staging that had no safety equipment to prevent falls.

[¶ 23] In *Houde,* the plaintiff alleged that she tripped on soot on the kitchen floor of a friend's apartment, but she also testified that she thought she had cleaned up the soot completely the night before the accident and she acknowledged that she did not see soot on the floor on the day of the accident or immediately after she fell. *Houde,* 2001 ME 183, ¶¶ 1, 2, 12, 787 A.2d at 758, 759–60. The Court held that it would be speculative for a fact-finder to infer causation on these facts. *Id.* 12, 787 A.2d at 760. Addy, in contrast, was exposed to an indisputably dangerous condition when he fell while descending staging that lacked any safety equipment.

[¶ 24] This case is similar to *Marcoux,* in which the Court affirmed a denial of the defendant's motion for summary judgment. 2005 ME 107, ¶¶ 26, 27, 881 A.2d at 1146. In *Marcoux,* the plaintiff presented evidence of a dangerous condition consisting of a slippery substance on the floor. *Id.* 26, 881 A.2d at 1146. The plaintiff alleged that she fell as a result of coming into contact with the slippery substance. *Id.* The additional facts she offered, namely that she saw a stain on the floor, that she noticed its color, that she tried to avoid it, that she felt something slippery when she fell, that she noticed the stain again after she fell, and that she noticed a stain on her pants afterwards, amount to nothing more than her assertion that she had physical contact with the stain. *Id.* From this, causation can be inferred. *Id.*

[¶ 25] Addy alleges no less when he states that he fell while descending the staging. By alleging that he fell while climbing down the staging, Addy alleges that he had physical contact with the staging. The plaintiff in *Marcoux* was not required to remember exactly how she came into contact with the slippery sub-

stance or where exactly she stepped, in order to avoid summary judgment. *Id.* ¶¶ 26, 27, 881 A.2d at 1146. For some unexplained reason, however, Addy is being denied the benefit of a reasonable inference on causation, even though the facts he alleges are legally indistinguishable from those in *Marcoux.*

[¶ 26] In addition, by misstating both the facts and the holdings in *Thompson v. Franckus (Thompson I),* 150 Me. 196, 107 A.2d 485 (1954) and *Thompson v. Frankus (Thompson II),* 151 Me. 54, 115 A.2d 718 (1955), the Court erroneously distinguishes this similar and controlling case. A detailed discussion of the *Thompson* decisions is warranted due to the significance and consequences of the Court's error. *Thompson* was a single case with two appeals; the facts are recited in the first appeal. *Thompson I,* 150 Me. at 197–98, 107 A.2d at 486. The plaintiff[3] fell down the common stairs of an apartment building belonging to the defendant. *Id.* The plaintiff had visited a tenant and was leaving after dark. *Id.* at 197, 107 A.2d at 486. There was no lighting in the common stairwell. *Id.* at 197–98, 107 A.2d at 486. At the top of the stairs, sometime before the plaintiff actually fell, she reached for a handrail but found there was none. *Id.* at 197, 107 A.2d at 486. She did not begin her descent at that time. *Id.* at 197–98, 107 A.2d at 486. Rather, she waited while the tenant went to get a match. *Id.* at 198, 107 A.2d at 486. She then found a matchbook in her purse, and, while the tenant was still gone, she lit a match and started down the stairway. *Id.* The linoleum on the treads of each stair was badly worn, which created a hazard. *Id.* In taking a step, the plaintiff tripped and fell the length of the stairway. *Id.*

[¶ 27] The first trial resulted in a jury verdict for the plaintiff. *Id.* at 197, 107

A.2d at 486. The defendant appealed, and the Court ordered a new trial for the sole reason that the jury had been given no instruction on the landlord's duties regarding the common stairway. *Id.* at 199–202, 204, 107 A.2d at 487–89. The evidence presented on retrial was not materially different from that presented in the first trial. *Thompson II,* 151 Me. at 55, 115 A.2d at 718. After the second trial, the court granted a directed verdict for the defendant. *Id.* This Court vacated the judgment, noting that the jury could have found both that the landlord had negligently failed to repair the linoleum and that this dangerous condition was aggravated by the lack of any lighting. *Id.* at 57, 61, 115 A.2d at 719, 722. The Court held that the defendant's negligence was a jury question on this evidence. *Id.* The Court also held that the plaintiff's contributory negligence was a jury question. *Id.* at 57, 115 A.2d at 719–20.

[¶ 28] The majority now errs in stating that the lack of a handrail was significant on the issue of causation in the *Thompson* decisions. The lack of a handrail was not discussed, or even mentioned, as a causal factor in either decision, probably because the plaintiff's discovery of the lack of a handrail preceded her accident by some period of time. *Thompson I,* 150 Me. at 197–98, 107 A.2d at 486. *Thompson II* concerned itself only with the deteriorated linoleum and the effect of that condition on the landlord's duty to light the stairwell. *Thompson II,* 151 Me. at 57, 115 A.2d at 719.

[¶ 29] A side-by-side comparison of the facts of *Thompson* with those presented by Addy demonstrates that the similarities are compelling. In *Thompson,* the plaintiff attempted to descend the stairs of an apartment building. *Thompson I,* 150 Me.

**3.** I refer solely to the plaintiff wife; her husband had a consortium claim.

at 197–98, 107 A.2d at 486. Addy attempted to descend the staging. In *Thompson,* the stairs were in a dilapidated condition, thus presenting a safety hazard. *Thompson I,* 150 Me. at 198, 107 A.2d at 486. Likewise, Addy was faced with a safety hazard upon his descent of the staging because it was not equipped with safety equipment. In *Thompson,* the plaintiff tripped and fell as she was descending the stairs. *Id.* Addy fell as he was descending the staging. There is no rational basis for distinguishing the facts in *Thompson* from those presented by Addy.

[¶ 30] The Court's erroneous evaluation of the *Thompson* decisions gives rise to a second problem as well: Addy, like the plaintiff in *Thompson,* lacks a particularized memory of the accident, but, unlike the plaintiff in *Thompson,* Addy's case has been decided against him on summary judgment. Addy is put at a disadvantage due to his lack of memory, even though it may be that the accident itself affected his ability to both perceive what was happening during the accident and remember it afterwards. Depriving Addy of a claim on this basis, especially when there is evidence sufficient to withstand summary judgment on Jenkins's breach of duty to provide safety equipment, runs directly against our decision in *Thompson II:*

> [D]efendant's counsel contend that "if the plaintiff, who knew and could see what she was doing, cannot tell the jury what caused her to fall, how can a jury answer this question without speculation, conjecture or guessing?" The fallacy of this argument is readily apparent. A plaintiff may under many circumstances be completely unable to remember or recount or explain an accident, but may nevertheless recover if the deficiency is met by other reliable evidence.... A jury cannot base their conclusions upon guess or speculation, but they are entitled to draw reasonable inferences and their verdict must stand if the evidence is such as to justify in their minds a reasonable belief of the probability of the existence of the material facts.... To hold otherwise would be but to invite perjury on the part of plaintiffs who in all honesty do not know or cannot recall exactly what did happen.

151 Me. at 58–59, 115 A.2d at 720 (quotation marks omitted). In *Thompson II,* the plaintiff thus was permitted to go before a jury notwithstanding her lack of memory about the accident. *Id.* Similarly, the defendant in *Rodrigue v. Rodrigue,* 1997 ME 99, ¶¶ 14–15, 694 A.2d 924, 927, was not entitled to judgment as a matter of law, even though the plaintiff could not remember exactly how the accident happened, but could only remember that she slipped when she stepped on debris on the stairs. Addy should not be deprived of the opportunity to let the jury decide the facts, in spite of his lack of memory about the specifics of his accident.

[¶ 31] This case has important and unfortunate repercussions for plaintiffs who have been injured when encountering an acknowledged and known safety hazard and who have little or no memory of how the accident happened. Plaintiffs who experience memory loss as part of the experience of an accident or injury may, ironically, be at a greater disadvantage when seeking to recover for their injuries. *See Benezra v. Holland Am. Line–Westours, Inc.,* No. 98–35628, 2000 WL 374611, at *2, 2000 U.S.App. LEXIS 6818, at *6 (9th Cir. April 12, 2000) (Reinhardt, J., dissenting).

[¶ 32] Given the serious nature of the safety hazards in this case, and Jenkins's failure to provide safety equipment that was designed to prevent a worker's fall, I believe that the evidence should be presented to the jury and that it would be

reasonable for a jury to infer causation. This is not an appropriate case for summary judgment. Addy's lack of memory about the specifics of the accident may present a credibility issue for the jury, but it provides no basis, in the context of all of the facts presented, for disposing of this case prior to trial. *See Dionne v. LeClerc,* 2006 ME 34, ¶ 15, 896 A.2d 923, 929.

[¶ 33]   I would vacate the judgment and remand the case.