ENTERED FEB 0 4 2015

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-388
NDM-CUMX-01-26-2015

EUGENE J. SMITH, Individually
and as Personal Representative
of the ESTATE OF LOIS W. SMITH,

Plaintiff

v.

TIMOTHY SALVESEN, d/b/a
THE MAINE HOUSES,

Defendant

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

26 JAN '15 AM8:35

Before the court is the defendant's motion for summary judgment. In this case, Lois Smith fell and sustained fatal injuries while staying at the Maine Farmhouse, a guesthouse owned by defendant Timothy Salvesen. Plaintiff argues Lois Smith's fall was caused by the negligent design of a staircase in the bedroom the Smiths occupied. In the complaint, plaintiff alleges: count I: negligence; and count II: wrongful death. Defendant argues the evidence is insufficient as a matter of law to support a finding of proximate cause for Lois Smith's harm. For the following reasons, the motion is granted.

### FACTS

During the weekend of October 6, 2012, Eugene and Lois Smith were being honored at Hebron Academy for their work and generosity in support of the school. (Pl.'s Add. S.M.F. ¶ 5.)[1] Prior to their trip, the Smiths made arrangements through Hebron Academy to stay at the Maine Farmhouse. (Pl.'s

---

[1] Plaintiff refers to its additional statement of fact as its "opposing statement of facts." Plaintiff refers to its opposing statement of fact as its "response to defendant's statement of material facts." The court uses the proper designations in this order.

Add. S.M.F. ¶ 6.) The Smiths were given a code to enter the house and told that they would be staying on the second floor, but they were not given a specific room number. (Pl.'s Add. S.M.F. ¶ 6.) They had no contact with anyone representing the Maine Farmhouse at any time about where they would stay or about any potential hazards in the house.[2] (Pl.'s Add. S.M.F. ¶ 7.)

On Friday October 5, 2012, the Smiths arrived at the Maine Farmhouse, entered the hall, walked up the hall steps, and chose bedroom 5 as their room. (Pl.'s Add. S.M.F. ¶¶ 8-9.) When they went to sleep that night, the Smiths were unaware that there was a private staircase inside their bedroom, which was actually a two-level suite. (Pl.'s Add. S.M.F. ¶ 9.) After going to bed, the next thing plaintiff remembers is being awakened by a loud crashing noise and his wife's scream. (Pl.'s Add. S.M.F. ¶ 11.) When plaintiff awakened it was approximately 7:00 a.m. on the morning of October 6 and not completely dark. (Pl.'s Add. S.M.F. ¶ 17.)

When he heard the scream, plaintiff jumped out of bed to look for his wife. (Pl.'s Add. S.M.F. ¶ 12.) After searching the bathroom and the hall stairs without success, plaintiff discovered the additional staircase inside the bedroom.[3] (Pl.'s Add. S.M.F. ¶ 12.) He switched on the light and discovered his wife lying on a platform at the bottom of the first portion of the stairs. (Pl.'s Add.

---

2 Although alleged in the complaint, plaintiff does not argue in his memorandum that defendant was negligent for failing to warn the Smiths of the existence of a hazardous condition in the bedroom.

3 Eugene Smith originally testified in his deposition that he did not know whether his wife was going down the stairs when she fell. (Def.'s Supp. S.M.F. ¶ 11.) In his affidavit, prepared after the deposition was taken, he states that he believes she fell from the top of the stairs. (Pl.'s Add. S.M.F. ¶ 18.) The court does not rely on this statement to the extent it conflicts with his deposition testimony. Schindler v. Nilsen, 2001 ME 58, ¶ 9, 770 A.2d 638 ("In summary judgment practice, a party may not submit an affidavit attempting to create a dispute as to material facts by making statements contrary to statements in that party's own prior sworn testimony.").

2

S.M.F. ¶ 12.) His wife was bleeding from her head. (Pl.'s Add. S.M.F. ¶ 14.) Lois Smith was taken to Central Maine Medical Center, where she died from her injuries on October 7, 2012. (Pl.'s Add. S.M.F. ¶¶ 14-15.)

Plaintiff's expert, Richard Dolby, asserts that the Life Safety Code applies to the Maine Farmhouse. (Pl.'s Add. S.M.F. ¶¶ 21-22.) After investigating the construction of the stairs, Mr. Dolby identified what he considers several defects, including riser height inconsistency and improper railing height. (Pl.'s Add. S.M.F. ¶¶ 21-30, 32.) Plaintiff argues that the trier of fact can draw a reasonable inference that these defects caused Lois Smith to fall down the stairs.[4]

Lois Smith was 84 years old at the time of the fall. (Def.'s Supp. S.M.F. ¶ 2.) She had multiple medical conditions and complications from diabetes, including "persistent and worsening" visual impairment caused by proliferative diabetic retinopathy. (Def.'s Supp. S.M.F. ¶¶ 2-3.) She had an especially difficult time seeing at night, at least for the purposes of driving. (Def.'s Supp. S.M.F. ¶ 4, as qualified by Pl.'s Opp. S.M.F. ¶ 4.)

Lois Smith also suffered from pain, numbness, and tingling in her feet and legs as a result of peripheral neuropathy. (Def.'s Supp. S.M.F. ¶ 5.) According to defendant's expert witness, Lois Smith was at a high risk of falling based on her pre-existing medical conditions.[5] (Def.'s Supp. S.M.F. ¶ 7.)

---

4 The court does not rely on Mr. Dolby's statement in his affidavit that "the one inch differential in riser height and the known risks associated with such a defect should be considered a critical factor in deciding whether an inference of causation can reasonably be drawn." (Pl.'s Add. S.M.F. ¶ 31.) The statement is conjecture and was not offered by Mr. Dolby in his deposition taken before the affidavit was prepared. Plaintiff did not supplement the responses to interrogatories with this new expert opinion. (Def.'s Supp. S.M.F. ¶¶ 1-11; Def.'s Reply Mem. 4.)

5 Plaintiff disputes that Lois Smith was at high risk for a fall but plaintiff does not cite any expert testimony. See Merriam v. Wanger, 2000 ME 159, ¶ 17, 757 A.2d 778 ("Allowing a jury to infer causation on complex medical facts without the aid of expert

3

1. Standard of Review

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Dussault v. RRE Coach Lantern Holdings, LLC, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting F.R. Carroll, Inc. v. TD Bank, N.A., 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." McIlroy v. Gibson's Apple Orchard, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting N. E. Ins. Co. v. Young, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." Lewis v. Concord Gen. Mut. Ins. Co., 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." Id.

2. Premises Liability

The elements of a negligence claim are "(1) duty, (2) breach of that duty, (3) causation, and (4) harm to the plaintiff." Durham v. HTH Corp., 2005 ME 53,

---

testimony on the subject and without some showing that [defendant's] conduct was 'more likely than not' a cause of [plaintiff's] injury, stretches the jury's role beyond its capacity."). Plaintiff's attorney has submitted an affidavit in which she states that the medical records contain no reference to any fall risk. (Allott Aff. ¶ 8; see Pl.'s Add. S.M.F. ¶ 3; Simth Aff. ¶ 6.) In fact, Lois Smith's medical records mention several times that she "had a fall." (See, e.g., Pl.'s Ex. 2-B, Record of 2/19/10; Def.'s Supp. S.M.F. ¶ 7.) In addition, plaintiff's attorney is not a medical expert and would not be permitted to testify at trial. M.R. Evid. 702; M.R. Prof. Conduct 3.7; M.R. Civ. P. 56(e). Finally, the records speak for themselves.

4

¶ 8, 870 A.2d 577. In premises liability "slip and fall" negligence cases, "a business owner owes a 'positive duty of exercising reasonable care in providing reasonably safe premises . . . when it knows or should have known of a risk to customers on its premises.'" Id. (quoting Budzko v. One City Ctr. Assocs. Ltd. P'ship, 2001 ME 37, ¶ 11, 767 A.2d 310). Proximate cause is defined as "an action occurring in a natural and continuous sequence, uninterrupted by an intervening cause, that produces an injury that would not have occurred but for the action." Cyr v. Adamar Assocs. Ltd. P'ship, 2000 ME 110, ¶ 6, 752 A.2d 603. To demonstrate proximate causation, plaintiff must show "some reasonable connection between the act or omission of [defendant] and the damage which [plaintiff] has suffered." Addy v. Jenkins, 2009 ME 46, ¶ 12, 969 A.2d 935. "A defendant is entitled to a summary judgment if there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff." Id. (quoting Houde v. Millett, 2001 ME 183, ¶ 11, 787 A.2d 757).

In the motion for summary judgment, defendant does not challenge duty or breach. He challenges whether plaintiff can prove the alleged defects in the staircase proximately caused Lois Smith's injuries.

3. Proximate Cause

Under Addy v. Jenkins, plaintiff's evidence in the summary judgment record in this case is insufficient as a matter of law to support a finding that defendant's alleged breach was a proximate cause of Lois Smith's injuries. 2009 ME 46, 969 A.2d 935. The court described the summary judgment record in Addy as follows:

5

The evidence presented to the court on the summary judgment motion is that Addy was working for Jenkins; that Jenkins had erected scaffolding next to a building on which Addy was working; and that the scaffolding had not been fully completed and was missing some ladders, platforms, and railings. At the time of his injury, Addy had been working on the roof. Addy remembers that he stepped off the roof to begin his descent to the ground, that he fell to the ground, and that he woke up on the ground having suffered serious injury. Although Addy's evidence is somewhat contradictory, when viewed in the light most favorable to him, there is evidence that his fall was from the staging erected by Jenkins. His memory is otherwise unclear, however, and he does not remember how he fell or what caused him to fall. More specifically, he does not recall whether his fall was connected in any way to the absence of a ladder, platform, or railing on the staging, which are those very facts on which he relies to establish Jenkins's breach of its duty of care.

Addy, 2009 ME 46, ¶ 11, 969 A.2d 935. The court observed that Addy raised a genuine issue of material fact as to whether Jenkins breached a duty. Addy "established on a prima facie basis that Jenkins owed a duty to [Addy] to provide a safe workplace environment, which would include safe staging, and that Jenkins knew or should have known both that the staging lacked safety equipment and that Addy had previously fallen." Id. ¶ 9. The court granted summary judgment, however, because plaintiff failed "to establish a connection between any defect in the staging and the injury he suffered."[6] Id. ¶ 14; see also Durham, 2005 ME 53, ¶ 9 n.2, 870 A.2d 577 (noting insufficient evidence of causation where plaintiff could not remember how she fell and there was no other evidence of causation).

---

6 Plaintiff's assertion that the Addy court granted summary judgment because the plaintiff could not demonstrate where he fell from is plainly incorrect. (Pl.'s Opp. Mem. 10-11.) The Addy court explicitly found that there was evidence that plaintiff fell from the defective staging. Addy, 2009 ME 46, ¶ 11, 969 A.2d 935 ("[W]hen viewed in a light most favorable to him, there is evidence that his fall was from the staging erected by Jenkins."). The court concluded that, although plaintiff could establish "from where" he fell, he could not establish "how" he fell. Id. ¶ 14.

Following Addy, it is insufficient for a plaintiff to show that she came into contact with an unreasonably dangerous condition and that she suffered injuries that are consistent with that dangerous condition. Additional evidence of some link between the accident and the dangerous condition is required. As the dissent in Addy pointed out, by preventing plaintiff from relying on a reasonable inference alone to establish proximate causation, the decision makes it more difficult for plaintiff to overcome summary judgment in unreasonably dangerous condition cases.[7] Id. ¶¶ 19, 31; see also Denitsa N. Pocheva-Smith, Has Addy v. Jenkins, Inc. Heightened the Standard for Establishing A Reasonable Inference of Proximate Cause in Maine?, 63 Me. L. Rev. 349, 365 (2010) (concluding that Addy "has heightened the standard for showing a reasonable inference of proximate cause").

The cases plaintiff relies on preceded Addy, and even accepting their continued validity, they are distinguishable from this case. In Marcoux v. Parker Hannifin/Nichols Portland Division, the plaintiff alleged that she slipped on a green stain that was on the floor of defendant's plant. 2005 ME 107, ¶ 3, 881 A.2d 1138. In the summary judgment record, plaintiff produced evidence that she "saw a green stain, the stain was dark green but its color faded toward its edges, she tried to avoid the stain, she felt something slippery when she fell, she noticed a dark stain near her after she fell, and she later noticed a stain on the right knee of the pants that she had been wearing." Id. ¶ 26 (emphasis added). Thus, plaintiff's own testimony that she felt something slippery as she fell and

---

7 Plaintiff appears to acknowledge this conclusion and argues it puts an unfair burden on those who cannot recall the circumstances of the accident and cannot produce evidence. (Pl.'s Opp. Mem. 15.)

7

discovered a stain on her pants after her fall provided the necessary evidence to link the stain—the unreasonably dangerous condition—to her fall.

Similarly in <u>Rodrigue v. Rodrigue</u>, the plaintiff slipped while walking down the stairs to the basement of her apartment. 1997 ME 99, ¶ 2, 694 A.2d 924. There was evidence in the record that there was debris on the stairs, and plaintiff specifically testified, "she slipped when she stepped on some of the debris left on the stairs." <u>Id.</u> ¶ 15.

Finally, plaintiff argues that this case is indistinguishable from <u>Thompson v. Frankus</u>, a case involving a plaintiff who tripped while descending some stairs.[8] 151 Me. 54, 55, 115 A.2d 718, 719 (1955). In <u>Thompson</u>, the plaintiff produced evidence showing that the linoleum covering the stairs was badly deteriorated, the stairs were the only means of egress, and plaintiff lit a match to descend the stairs because they were unlighted.[9] <u>Id.</u> 115 A.2d at 719. The court further noted that the plaintiff proceeded "slowly and cautiously" down the stairs. <u>Id.</u> at 59, 115 A.2d at 720. In distinguishing another case, the court described the facts in <u>Thompson</u> as "a situation where a disinterested witness saw the plaintiff trip on a stair where a dangerous condition likely to cause tripping was observed. If the jury elected to believe the plaintiff and her eye witness, they might properly have found upon this evidence that the plaintiff here did <u>not</u> do any of the things which might otherwise have caused her to fall

---

8 The Law Court issued two opinions in <u>Thompson v. Frankus</u>. 150 Me. 196, 107 A.2d 485 (1954); 151 Me. 54, 115 A.2d 718 (1955). The second decision, discussed in this order, addressed proximate cause.
9 Plaintiff in this case does not allege inadequate lighting. (Pl.'s Opp. S.M.F. ¶ 18.)

8

quite apart from the negligence of the defendant."[10] Id. at 61, 115 A.2d at 721. Thus, the court emphasized that plaintiff tripped on a step where the dangerous condition existed and there did not appear to be any other explanation for the fall.

The causation evidence in this case is weaker than the evidence in Addy and in any of the other proximate cause cases in which the court denied summary judgment. Plaintiff is unable to establish even that Lois Smith came into contact with the alleged defective stairs prior to her fall. It is possible that she tripped before she reached the stairs but continued her fall down the steps. Unlike in Thompson, Lois Smith cannot testify that she tripped on the stairs and there was no other eyewitness to the fall. Even assuming the jury could infer that Lois Smith fell as she was descending the stairs, there is no evidence, direct or circumstantial, as to how she fell. See Addy, 2009 ME 46, ¶ 14, 969 A.2d 935.[11]

Because plaintiff has failed to raise a genuine issue of material fact that any alleged breach of duty by defendant proximately caused Lois Smith's fall,

---

10 The Addy court distinguished Thompson in a footnote on the grounds that the plaintiff in Thompson "established a causal connection between the condition of the stairs and the absence of the hand rail, and the fall she sustained." Addy, 2009 ME 46, ¶ 14 n.2, 969 A.2d 935. That the lack of a handrail had any impact on the Thompson decision is difficult to accept given that there is absolutely no reference to a handrail in the second decision, which is the only decision that discusses proximate cause. Id. ¶ 28 (Silver, J., dissenting).

11 Even if Lois Smith had been in perfect health at the time of the fall, there would be insufficient evidence to support a finding of causation. In fact, Lois Smith had health problems that cast further doubt on plaintiff's theory that the defective stairs caused her fall. The undisputed evidence shows that Lois Smith's vision was failing, she had trouble seeing at night, and she did not turn the light on before she fell in the early morning. (Def.'s Supp. S.M.F. ¶¶ 3, 4, 15.) Moreover, defendant's expert testimony, which is undisputed, establishes that, based on Lois Smith's medical conditions, she was at high risk for a fall. (Def.'s Supp. S.M.F. ¶ 7.) Plaintiff has not provided any expert testimony in the summary judgment record that contradicts defendant's expert's conclusions.

9

defendant is entitled to judgment as a matter of law on both counts of plaintiff's complaint.

The entry is

> Defendant's Motion for Summary Judgment is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff on Counts I and II of Plaintiff's Amended Complaint.

Date: January 23, 2015

Nancy Mills
Justice, Superior Court

10

ELIZABETH GERMANI ESQ
GERMANI MARTEMUCCI RIGGLE & HILL
43 DEERING ST
PORTLAND ME 04101




MICHELLE ALLOTT ESQ
FARRIS LAW
491 US ROUTE ONE
SUITE 22
FREEPORT ME 04032