STATE OF MAINE                              SUPERIOR COURT
SAGADAHOC, SS                               CIVIL ACTION
                                            DOCKET NO. CV-16-07

CHARLES D. BRADEN, JR.,          )
          Plaintiff              )          ORDER ON
                                 )          DEFENDANT'S MOTION
v.                               )          FOR SUMMARY JUDGMENT
                                 )          AND
GRANITE CORPORATION              )          PLAINTIFF'S MOTION
MEDICAL CENTER                   )          FOR SPOLIATION
          Defendant,             )

This matter is before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Spoliation.

I. Background

A. *The Fall*

In the summer of 2011, renovations were being made to Gilbert Elementary School in Augusta ("the Project"). (S.M.F. ¶ 1; Add. S.M.F. ¶ 1). Defendant, Granite Corporation, was subcontracted to do the HVAC work on the Project. (S.M.F. ¶ 5). In 2011 Kevin Purnell was, and still is, the President of Granite Corporation. (S.M.F. ¶ 6). At the time, Charles D. Braden, Jr., Plaintiff, was employed by Central Maine Drywall, another subcontractor on the Project. (S.M.F. ¶¶ 2, 4). The General Contractor ("GC") on the Project was S.J. Wood Construction Co., Inc. (S.M.F. ¶ 3).

On August 8, 2011, Plaintiff was working on the Project, installing a metal grid for a suspended ceiling about 12 feet above the floor. (Add. S.M.F. ¶ 14). Prior to entering the hallway where the work was to be performed, Plaintiff and his co-workers looked down the hall for trip hazards. (Add. S.M.F. ¶ 17). To

1

perform his job, Plaintiff wore stilts that were about 3 feet high. (Add. S.M.F. ¶ 20). While hanging the ceiling grid, Plaintiff fell and hit the ground. (Add. S.M.F. ¶ 24). His co-workers pointed out a puddle of water on the floor, which all of them noticed for the first time. (Add. S.M.F. ¶¶ 25, 20). Plaintiff's stilts were wet. (Add. S.M.F. ¶ 30). Plaintiff looked up and saw water dripping off a piece of the HVAC system. (Add. S.M.F. ¶¶ 27-28).

B. *Assigning Blame After the Fact*

Plaintiff told the GC's on-site supervisor that he slipped and fell in a puddle of water. (Add. S.M.F. ¶ 31). Plaintiff testified that the supervisor blamed "the plumbers" for the puddle, stating that he had ordered the "HVAC plumbers" several times to put buckets under leaks. (S.M.F. ¶ 8; Add. S.M.F. ¶ 32). Plaintiff claims that on-site, Defendant and its employees were referred to as "plumbers," and that Mr. Purnell described Defendant's work on the Project as "plumbing" in an email. (Add. S.M.F. ¶ 6; *See* Pl.'s Ex. E).

Defendant stated that to perform its job, all the water had to be purged from the HVAC system. (S.M.F. ¶ 10). Defendant asserts that the system was purged in June, and remained purged and not "recharged" with water until after Plaintiff's fall. (S.M.F. ¶¶ 11-13). However, in a July "Charge Proposal" to the GC, Mr. Purnell stated Defendant needed to "drain piping" in order to install ductwork. (Add. S.M.F. ¶ 7). Additionally, Defendant's employees may have used a water and soap solution to test the pipes for leaks throughout the summer. (Add. S.M.F. ¶¶ 8-13). Lastly, in a handwritten note from the week before the fall, the GC's supervisor informed his superior that parts of the HVAC plumbing had leaked after being tested, and the supervisor wanted to ensure that Defendant received this information. (Add. S.M.F. ¶ 33; *See* Pl.'s Ex. F).

2

## C. Destruction of Documents

Defendant had knowledge of a potential claim regarding Plaintiff's fall through three channels: an October 7, 2011 letter from Plaintiff's worker's compensation supervisor; a January 4, 2012 Notice of Claim served upon Defendant in connection with this litigation; and notification by Defendant's attorney to Mr. Purnell roughly six months after the fall.

Two years later, on or around July 30, 2014, Defendant's computer crashed, destroying the only electronic records of the Project. Upon examination in 2017 by a computer recovery specialist, only two files were recovered from the crashed computer: "Time by Job Detail" and "Item Actual Cost Detail."

Defendant's standard retention policy was to move paper files to the attic for storage approximately two years after completion of a project. In August 2014, when Defendant's air conditioner in the attic was being serviced, Defendant told employees to discard any wet or damaged files in the attic. Mr. Purnell did not personally examine all files discarded at that time, and therefore cannot affirmatively state whether the Project's files were discarded then. However, Mr. Purnell personally searched for the paper files requested by Plaintiff (employee time cards and the "Project Book") in 2017 and could not locate them.

The time cards would show detail about the tasks done each day by each of Defendant's employees. The Project Book would show the scope of the work, specifications, drawings, and task lists of items to be accomplished. The Time by Job Detail shows each task category, the employee who performed the work, and the date and hours spent on the work. (*See* Pl.'s Ex. H). Mr. Purnell states that all the information on the time cards can be found on the Time by Job Detail

3

document that was provided, except the employees' signatures.

Defendant also contends that the GC would have a copy of the Project Book. (*See* Purnell Depo. 72-73). Plaintiff subpoenaed the GC's full Project file, including approximately 200 pages of Defendant's documents (contracts, drawings, specifications, and emails).

## II. Summary Judgment

### A. *Standard of Review*

Summary judgment is appropriate if, reviewing the evidence in the statements of fact and record references in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(a), (c); *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 10, 973 A.2d 743 (internal citations omitted). A fact is material if "it has the potential to affect the outcome of the suit." *Id.* "A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Id.* To withstand a motion for summary judgment, the non-moving party must present sufficient <u>admissible</u> evidence to establish a prima facie case for each element of the claim or defense. *Watt v. UniFirst Corp.*, 2009 ME. 47, ¶ 21, 969 A.2d 897; M.R. Civ. P. 56(e).

### B. *Discussion*

#### i. Evidentiary Issues

As stated above, a determination on a motion for summary judgment must be based on facts admissible at trial. For evidence and documents to be admissible, they must be authenticated. M.R. Evid. 901(a), 104(b). "To satisfy the

4

requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." M.R. Evid. 901(a).

In making out his prima facie case, Plaintiff relies on three statements contained within three separate documents: (1) a statement made in an email from Mr. Purnell where he referred to Defendants' work on the Project as "plumbing," (2) a statement contained in the July "Charge Proposal" prepared by Mr. Purnell where he claimed Defendant needed to "drain piping," and (3) a statement from a handwritten note from the GC's supervisor to his superior where he notified his superior of leaks in the HVAC system.

The only other exhibits submitted by Plaintiff in connection with his Opposition include the Plaintiff's Answers to Interrogatories and depositions of Plaintiff and Mr. Purnell. Plaintiff has provided no affidavit swearing to the authenticity of the email, the Charge Proposal, or the supervisor's handwritten notes. Further, neither the sworn depositions nor the sworn interrogatories make any reference to those documents. The documents are also not of the type with distinctive characteristics that self-authenticate. M.R. Evid. 901(b)(4). Such distinctive characteristics include, for example, a letter on letterhead, with postmark and matching return address on the envelope or a communication from a person that discloses knowledge of facts "peculiarly" known by that person. M.R. Evid. 901 Adviser's Notes, Example (4).

If a document relied upon in a motion for summary judgment unsupported by an affidavit swearing to its authenticity, and with no foundation is laid for it, is not admissible and cannot be considered. M.R. Civ. P. 56(e), *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 11, 21 A.3d 1015 (in summary judgment motion,

5

party not allowed to rely on a balance report not supported by an affidavit verifying its authenticity or establishing that it was prepared by someone with personal knowledge). This is the case for the three documents on which Plaintiff relies. There is no evidence to support a finding that the documents are what Plaintiff says they are, and therefore, pursuant to M.R. Evid. 901, the documents and their contents are not admissible.

Additionally, Plaintiff relies on a statement from his deposition where he testified that the GC's supervisor said that he had previously told the HVAC plumbers to put buckets under the leaks. Plaintiff claims that this hearsay-within-hearsay is offered for effect on the listener. The first level of hearsay (the supervisor's statement to the "plumbers") is properly offered for effect on the listener to show the "plumbers" were on notice of a potential leak, whether the leak existed or not. However, in the second level of hearsay (the supervisor's statement to Plaintiff), Plaintiff is the listener and the statement was told to him after he fell. The only effect it would have had on Plaintiff after the fall would be to notify him who to sue. The relevance of this evidence is indeed for the truth that the supervisor actually told the Defendant about the leaks. Plaintiff uses this statement as evidence of both Defendant's duty and breach. (Pl.'s Opp. to Def.'s Mot. for S.J. 7, 9). However, the statement to Plaintiff did not have any effect on Defendant's actions, and would only have affected Defendant if it were true. Since this second level of hearsay is not properly offered for effect on the listener, the entire statement is inadmissible hearsay-within-hearsay.

*ii.* Merits

Without the inadmissible statements discussed above, the remaining relevant facts for Plaintiff's prima facie case are as follows: (1) immediately after

6

the fall, Plaintiff looked up and saw water dripping from the HVAC system; (2) Defendant's assertion that it purged the pipes in June and they were not "recharged" with water until after Plaintiff's fall; and (3) Defendant may have leak-tested the pipes with a water solution.

To make out its prima facie case and defeat Defendant's Motion, Plaintiff must show that Defendant owed a duty of care to Plaintiff, that it breached the duty of care, and that the breach proximately caused Plaintiff's injuries. *Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 8, 969 A.2d 935. In regards to duty, "a non-possessor who negligently creates a dangerous condition on the land may be liable for reasonably foreseeable harms." *Colvin v. A R Cable Services*-Me, 1997 ME 163, ¶ 7, 697 A.2d 1289. The possessor of Gilbert Elementary School is either the City of Augusta or the GC, who is in charge of the Project site, but it is certainly not Defendant, who is only a subcontractor. The only evidence that Defendant had notice of potential water on the floor creating a hazardous condition is that its employees <u>may have</u> used a water solution to test the pipes for leaks. This singular fact is too speculative to make a prima facie showing that Defendant had notice of foreseeable harm, creating a duty of care to Plaintiff.

III. Spoliation

In the civil context, the Law Court has not addressed the issue of spoliation and the sanctions to be applied. *Morin v. Harley-Davidson Motor Co. Group*, No. CV-11-73, 2013 Me. Super. LEXIS 174, *2-5 (Aug. 6, 2013, Androscoggin Cty., *Kennedy, J.*). Maine's Superior Courts have previously analyzed these issues under the spoliation test used by the First Circuit and the U.S. District Court for

7

the District of Maine. *See Id.*, *Town of Winthrop v. Bailey Bros.*, No. CV-12-313, 2014 Me. Super. LEXIS 34, *17 (Mar. 18, 2014, Cumberland Cty., *Murphy, J.*), and *York Ins. Co. v. Snow Flake Holdings d/b/a/ Downeast Energy*, No. CV-14-236, 2015 Me. Super LEXIS 51, *1 (Mar. 20, 2015, Cumberland Cty., *Mills, J.*).

Under the First Circuit and Maine U.S. District Court test, "the goals of the spoliation doctrine are to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence." *Driggin v. Am. Sec. Alarm Co.*, 141 F. Supp. 2d 113, 120 (D. Me. 2000) (citing first circuit case law). In a claim for spoliation, two prongs must be considered, (1) "prejudice to the non-offending party" and (2) "the degree of fault of the offending party." *Id.* The First Circuit weighs prejudice more heavily due to the remedial aim of the doctrine. *Id.* Bad faith is not required, but some degree of fault makes imposing a sanction more appropriate. *Town of Winthrop v. Bailey Bros.*, 2014 Me. Super. LEXIS 34, *17 (citing First Circuit case law and prior Maine Superior Court cases).

In *Morin*, *Bailey Bros.*, and *York Ins. Co.*, the courts determined that the actions of the allegedly-offending party were mere carelessness, not rising to the level of malice required for spoliation. Similarly here, there is no evidence that Defendant was anything more than careless in following its standard procedure of moving files up to the attic for storage, then later discovering that many files, not just those relating to the Project, were damaged. Additionally, Plaintiff has not shown that any evidence was lost due to the destruction of the Project Book, since there is nothing showing that the Project Book included documents not contained in those subpoenaed from the GC.

8

The two remedies sought by Plaintiff in this Motion for Spoliation are (1) the exclusion Defendant's testimony that the HVAC system was dry all summer and (2) a jury instruction permitting a negative inference to be drawn from the missing evidence. In *Morin*, *Bailey Bros.*, and *York Ins. Co.*, the carelessness of the allegedly-offending party only led to a potential jury instruction regarding negative inferences, but was left open for trial. None of the cases have allowed exclusion of statements, and since the facts here present no more than the carelessness in those cases, exclusion of Defendant's testimony is not a compelling remedy. Additionally, since summary judgment is being granted, the requested remedy of a jury instruction is moot.

IV. Conclusion

> ORDERED: Defendant's Motion for Summary Judgment is GRANTED.
>
> Plaintiff's Motion for Spoliation is DENIED.
>
> Judgment is entered for the Defendant in this matter.

DATE: November 16, 2017

Daniel I. Billings
Justice, Maine Superior Court

9